**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

| | | |
|---|---|---|
| **THE CINCINNATI INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 5:24-cv-05224-TLB** |
| **v.** | ) | |
| | ) | |
| **TNT CABLE CONTRACTORS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW, Plaintiff, The Cincinnati Insurance Company ("Cincinnati"), by and through the undersigned counsel, and hereby brings this Complaint for Declaratory Judgment against TNT Cable Contractors, Inc. ("TNT") pursuant to 28 U.S.C. § 2201.  For its Complaint for Declaratory Judgment, Cincinnati hereby alleges as follows:

## I.    THE PARTIES

1.    Cincinnati is an Ohio corporation with its principal place of business in the State of Ohio, and Cincinnati is registered and/or authorized to transact business in the State of Arkansas. Cincinnati's principal place of business is located at Cincinnati's corporate headquarters in Fairfield, Ohio, which is the location from which Cincinnati's high-level officers direct, control, and coordinate Cincinnati's activities. Thus, Cincinnati is a citizen of the State of Ohio for purposes of diversity jurisdiction.

2.    Upon information and belief, TNT is an entity incorporated under the laws of the State of Texas with its principal place of business located in Rogers, Arkansas.  TNT may be served with process via its registered agent, Tony Hagedorn, at 1003 Hummingbird Lane, Siloam Springs, Arkansas 72761.

4883-9299-5312, v. 1                                                 1

## II.   JURISDICTION AND VENUE

3.      This Court has the power to determine the parties' respective rights and other legal obligations as requested herein pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.  TNT's demand on Cincinnati, discussed below, creates an actual controversy for this Court to adjudicate.

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

5.      Venue is proper before this Court pursuant to 28 U.S.C. § 93(b) and 28 U.S.C. § 1391(a) because, upon information and belief, all relevant actions and transactions to TNT's claim occurred within this judicial district, and because TNT is located within this judicial district.

## III.   FACTUAL ALLEGATIONS

## THE CINCINNATI POLICY

6.      Cincinnati issued Policy No. EMP0519008 (collectively with all endorsements, the "Cincinnati Policy") designating TNT as the Named Insured.  A true and accurate copy of the Cincinnati Policy is attached hereto as **Exhibit 1**.

7.      The Cincinnati Policy is subject to a Policy Period of January 1, 2019 to January 1, 2022 (the "Policy Period").

The Crime Form

8.      The Cincinnati Policy includes the Crime Coverage Form (ML 116 01 16, the "Crime Form").

9. Insuring Agreement A. (Employee Theft) of the Crime Form is subject to a $1,500,000 limit of insurance per "occurrence" and a $5,000 deductible per "occurrence." It states:

> We will pay for loss of or damage to money, securities and other property resulting directly from theft committed by an employee, whether identified or not, acting alone or in collusion with other persons.
>
> For the purposes of this Insuring Agreement, theft shall also include forgery.

10. Definition V of the Crime Form defines "theft" to mean:

> (1) Under Insuring Agreement H., the unlawful taking of property to the deprivation of your client.
>
> (2) Under All Other Insuring Agreements, the unlawful taking of property to the deprivation of the Insured.

11. Definition G of the Crime Form defines "employee" to mean, in relevant part:

> a. Any natural person:
>   (1) While in your service and for the first 30 days immediately after termination of service, unless such termination is due to theft or any other dishonest act committed by the employee;
>   (2) Who you compensate directly by salary, wages or commissions; and
>   (3) Who you have the right to direct and control while performing services for you;
> b. Any natural person who is furnished temporarily to you:
>   (1) To substitute for a permanent employee as defined in Paragraph 1.a., who is on leave; or
>   (2) To meet seasonal or short-term work load conditions; while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the premises;
> c. Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph 1.b.;
> d. Any natural person who is:
>   (1) A trustee, officer, employee, administrator or manager, except an administrator or manager who is

an independent contractor, of any employee benefit plan; and

(2)    A director or trustee of yours while that person is engaged in handling funds or other property of any employee benefit plan;

e.    Any natural person who is a former employee, partner, member, manager, director or trustee retained as a consultant while performing services for you;

f.    Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the premises;

g.    Any employee of an entity merged or consolidated with you prior to the effective date of this insurance; or

h.    Any of your managers, directors or trustees while:

(1)    Performing acts within the scope of the usual duties of an employee; or

(2)    Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

12.    Exclusion C (Acts of Employees, Managers, Directors, Trustees or Representatives) of the Crime Form excludes coverage for:

[L]oss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

(1)    Whether acting alone or in collusion with other persons; or

(2)    While performing services for you or otherwise;

except when covered under Insuring Agreement A.1.

13.    Exclusion F (Indirect Loss) of the Crime Form excludes coverage for:

[L]oss that is an indirect result of an "occurrence" covered by this insurance including, but not limited to, loss resulting from:

(1)    Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property".

(2) Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

(3) Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

14. Exclusion G (Legal Fees, Costs and Expenses) of the Crime Form excludes coverage for:

[F]ees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement B.

15. Condition A.4 (Cooperation) of the Crime Form states:

You must cooperate with us in all matters pertaining to this insurance as stated in its terms and conditions.

16. Condition A.5 (Duties in the Event of Loss) of the Crime Form states:

After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

(1) Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement A., B. or H.) involves a violation of law, you must also notify the local law enforcement authorities.

(2) Submit to examination under oath at our request and give us a signed statement of your answers.

(3) Produce for our examination all pertinent records.

(4) Give us a detailed, sworn proof of loss within 120 days.

(5) Cooperate with us in the investigation and settlement of any claim.

17. Condition A.9 (Legal Action Against Us) of the Crime Form states:

You may not bring any legal action against us involving loss:

a. Unless you have complied with all the terms of this insurance;

4883-9299-5312, v. 1

5

b.    Until 90 days after you have filed proof of loss with us; and

c.    Unless brought within 2 years from the date you discovered the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

18.    Condition A.17 (Transfer of Your Rights of Recovery Against Others to Us) of the

Crime Form states:

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

19.    Insuring Agreement I. (Claim Expense) of the Crime Form is subject to a $25,000

limit of liability per "occurrence."  It states:

We will pay for claim expenses incurred by you to establish the existence and amount of any covered loss under any Insuring Agreement under this Coverage Part.

20.    Definition B of the Crime Form defines "claim expense" to mean:

[N]ecessary and reasonable expenses incurred and paid by you to establish the existence and amount of any covered loss. "Claim expense" shall not include any of your internal corporate fees or costs (direct or indirect) including, but not limited to, wages and salaries. "Claims expenses" shall not include expenses incurred by any "client".

21.    Definition C of the Crime Form defines "client" to mean, in relevant part:

[A]ny entity for whom you perform services under a written contract.

22.    Definition P of the Crime Form defines "occurrence," in relevant part, to mean:

(1) Under Insuring Agreements A. and H.:
    a.    An individual act;
    b.    The combined total of all separate acts whether or not related; or

      c.      A series of acts whether or not related; committed by an employee acting alone or in collusion with other persons, during the Policy Period shown in the Common Policy Declarations, before such Policy Period or both.

(2)  Under Insuring Agreement B.:

      a.      An individual act;

      b.      The combined total of all separate acts whether or not related; or

      c.      A series of acts whether or not related;

## THE ALLEGED LOSS

23.    On or about May 11, 2022, TNT submitted a proof of loss (the "Proof of Loss") alleging employee theft by TNT's former employee, Jeffrey Miles.

24.    The Proof of Loss asserts that Jeffrey Miles was employed by TNT from approximately 1999 to November 30, 2021, when he was terminated.

25.    TNT asserts that Jeffrey Miles submitted "suspicious" reimbursement requests that were approved and paid by TNT.

26.    TNT asserts that, from 2017-2021, Miles submitted "suspicious" reimbursement requests totaling $2,357,554.02, which requests were reviewed, approved, and paid by TNT.

27.    Upon information and belief, Jeffrey Miles denies any wrongdoing in connection with his employment with TNT and specifically denies falsifying any invoices, time cards or other documents.

28.    TNT was aware of and approved all transactions when issuing the reimbursements to Jeffrey Miles.

29.    TNT has not established that an "employee theft" occurred to trigger coverage under the Cincinnati Policy.

## COVERAGE IS NOT IMPLICATED UNDER THE CINCINNATI POLICY

30.    Insuring Agreement A. of the Crime Form is not implicated because TNT has not established that an "employee theft" occurred.

31.    Upon information and belief, TNT made voluntary reimbursements to Miles based on the expense reports, and Jeffrey Miles stated that all transactions were the result of legitimate reimbursements.

32.    Insuring Agreement A. of the Crime Form is not implicated because the Cincinnati Policy requires the loss to result directly from "theft" committed by an "employee." TNT has not established that an "employee theft" occurred.

33.    Insuring Agreement I. of the Crime Form is not implicated because coverage for "claim expenses" is only triggered once the insured establishes the existence and amount of a covered loss under any insuring agreement, and TNT has not established that an "employee theft" occurred.

34.    Pursuant to Condition A.9 of the Cincinnati Policy, TNT's claim is barred as no action was brought to enforce the claim on the Cincinnati Policy within two years of discovery of the alleged loss.

35.    Coverage is otherwise excluded pursuant to Exclusion C. of the Crime Form.

36.    Cincinnati continues to fully reserve any and all rights, remedies, and defenses at law, in equity, and under the Cincinnati Policy in relation to TNT's claim.

37.    Cincinnati's filing of this Complaint is not intended to waive any limitation or defense to coverage under the Cincinnati Policy, or any provision within the Cincinnati Policy, with regard to TNT's claim.

38.    Additional conditions, limitations, and exclusions may exclude or limit coverage for TNT's claim.

## COUNT I – DECLARATORY JUDGMENT

39. Cincinnati hereby incorporates by reference the allegations contained in Paragraphs 1 through 38 of this Complaint as if set forth fully herein.

40. TNT has failed to satisfy its burden of establishing all elements of coverage under Insuring Agreement A. of the Crime Form.

41. Cincinnati seeks a declaration as to whether TNT can satisfy its burden of establishing all elements of coverage under Insuring Agreement A. and/or Insuring Agreement I. of the Crime Form.

42. Cincinnati is entitled to a declaration that TNT's claim is not covered, in whole or in part, due to TNT's failure to establish that "employee theft" occurred.

43. Cincinnati is entitled to a declaration that TNT's claim is excluded, in whole or in part, by the exclusions in the Crime Form, including, but not limited to, Exclusion F (Indirect Loss) of the Crime Form.

44. Cincinnati is entitled to a declaration that TNT's claim is barred from recovery under the Cincinnati Policy by the two-year contractual limitations period (Condition A.9.).

45. Cincinnati is entitled to a judicial declaration of its rights and obligations under the Cincinnati Policy, if any, related to TNT's claim.

WHEREFORE, PREMISES CONSIDERED, Cincinnati respectfully requests the following relief:

1. That the proper process be issued and that TNT be required to answer this Complaint in the time prescribed to them by law;

2. For an Order declaring Cincinnati's rights and obligations under the Cincinnati Policy, if any, related to TNT's claim;

4883-9299-5312, v. 1                    9

3.     For an Order declaring that coverage is not implicated under Insuring Agreement A. of the Crime Form;

4.     For an Order declaring whether coverage is implicated under Insuring Agreement I. of the Crime Form; and

5.     For such further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Jarrod W. Stone
Jarrod W. Stone, TN Bar No. 023915
*Admitted to U.S.D.C. W.D. of AR on August 21, 2014*
Melissa Jane Lee, TN Bar No. 029228
*Admitted to U.S.D.C. W.D. of AR on March 9, 2016*
MANIER & HEROD, P.C.
1201 Demonbreun Street, Ste. 900
Nashville, TN 37203
(615) 742-9314 (phone)
(629) 500-1137 (fax)
JStone@ManierHerod.com
MLee@ManierHerod.com

*Attorneys for The Cincinnati Insurance Company*

4883-9299-5312, v. 1                                          10

## Certificate of Service

I hereby certify that a copy of the foregoing was served via this Court's CM/ECF system and/or via U.S. Mail on the 4th day of November, 2024, on the following:

TNT Cable Contractors, Inc.
c/o Registered Agent Tony Hagedorn
1003 Hummingbird Lane
Siloam Springs, Arkansas 72761


/s/ Jarrod W. Stone

4883-9299-5312, v. 1

11