

# The Cincinnati Insurance Company

A Stock Insurance Company

**Headquarters**: 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address**: P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

# PILLAR
# COMMON POLICY DECLARATIONS

---

Policy Number: **EMP 051 90 08**

---

Named Insured:    **TNT CABLE CONTRACTORS INC.**

Mailing Address:    **3938 S HONEYSUCKLE LN**
**ROGERS, AR 72758-8416**

Principal Address: **3938 S HONEYSUCKLE LN**
**ROGERS, AR 72758-8416**

---

Previous Policy Number:  **NEW**

---

Policy Period:      (At 12:01 AM standard time at your principal address shown above.)

FROM: **01-01-2019**          TO: **01-01-2022**

---

Agency: **ROGERS INSURANCE AGENCY, INC. 03-017**
City, State: **ROGERS, AR**

---

Shared Annual Aggregate Limit of Liability: **N/A**

Applicable to all **claims** under the following liability coverage parts:

---

In return for the payment of the premium and subject to all the terms and conditions of this policy, we agree with you to provide the insurance as stated in this policy.

Forms applicable to all coverage parts:

| | | |
|---|---|---|
| ML101 | 01/18 | GENERAL PROVISIONS |
| ML400 | 01/16 | SUMMARY OF PREMIUMS CHARGED |
| IA4234 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| ML4152AR | 09/16 | ARKANSAS CHANGES - CANCELLATION AND NONRENEWAL |
| ML4153AR | 09/16 | ARKANSAS CHANGES - PILLAR POLICY PROGRAM |

**ML 501 01 16**                                                      **Page  1 of  2**
EMP 051 90 08

```
ML4154AR   09/16   ARKANSAS CHANGES - CRIME COVERAGE
ML458      01/16   CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM
ML498AR    09/17   ACKNOWLEDGMENT OF DEFENSE COSTS INCLUDED WITHIN THE LIMITS OF
                   INSURANCE - ARKANSAS
IA4427     02/13   NOTICE OF LOSS CONTROL SERVICES
IP446      08/01   NOTICE TO POLICYHOLDERS
IA4338     05/11   SIGNATURE ENDORSEMENT
IP403AR    06/03   ARKANSAS NOTICE
```

Coverage part declarations:

```
ML512 01/16       EMPLOYMENT PRACTICES LIABILITY COVERAGE PART DECLARATIONS

ML516 01/18       CRIME COVERAGE PART DECLARATIONS
```

01-29-2019 16:03

**ML 501 01 16**

**Page** 2 **of** 2

EMP 051 90 08

# GENERAL PROVISIONS APPLICABLE TO
# ALL LIABILITY COVERAGE PARTS

These General Provisions apply only to those Coverage Parts which include a liability coverage, which shall include all Coverage Parts other than Crime Coverage. Furthermore, any reference to the "policy" in these General Provisions refers to all Coverage Parts other than Crime Coverage.

Throughout this policy, the words "we", "us" and "our" refer to the Company providing this insurance.

In consideration of the payment of the premium, in reliance on all statements in the **application** and all other information provided to us and subject to all the provisions of this policy, including the Declarations, we and the **insureds** agree as set forth below.

## SECTION I - DEFINITIONS

Where set forth in bold type in this policy, whether in singular or in plural, the following terms shall have the meanings indicated.

A.  **Application** means:

1.  The Application Form for this policy;

2.  Any materials submitted with the Application Form which shall be maintained on file with us and shall be deemed to be attached hereto as if physically attached; and

3.  Any warranty or representation provided to us within the last three years in connection with any policy of which this policy is a renewal or replacement.

B.  **Claim** has the meaning set forth in the applicable coverage part.

C.  **Debtor in possession** means a "debtor in possession" as that term is defined in Title 11 of the United States Code, as amended.

D.  **Defense costs** has the meaning set forth in the applicable coverage part.

E.  **Domestic partner** means a natural person who is not otherwise an insured, in a committed relationship with an **insured person**, which is legally recognizable as a marriage, civil union or domestic partnership in the state where the **claim** is made or suit is filed and the legal existence of the relationship is verifiable by legal, government documentation existing prior to the date of the **wrongful act** complained of in the **claim**.

F.  **Executive** has the meaning set forth in the applicable coverage part.

G.  **Extended reporting period** means the periods of time described in Section **XIX** of the General Provisions.

H.  **Insured persons** has the meaning set forth in the applicable coverage part.

I.  **Insured** has the meaning set forth in the applicable coverage part.

J.  **Interrelated** means all events or incidents which have as a common nexus any:

1.  Fact, circumstance, situation, event, transaction, or cause; or

2.  Series of causally connected facts, circumstances, situations, events, transactions or causes.

K.  **Loss** has the meaning set forth in the applicable coverage part.

L.  **Named insured** means the entity or entities shown in the applicable Declarations as a Named Insured and any such entity in its capacity as a **debtor in possession**.

M.  **Organization** has the meaning set forth in the applicable coverage part.

N.  **Personal injury** has the meaning set forth in the applicable coverage part.

O.  **Policy period** means the period from the inception date to the expiration date as set forth in the Declarations, or to the earlier date of cancellation of the applicable Coverage Part.

ML 101 01 18    Page 1 of 9

**P.** **Policy year** means the period within the **policy period** from the inception date as set forth in the Declarations to the succeeding anniversary date exactly 1 year later at 12:01 AM standard time, and **policy year** means any subsequent annual period between anniversary dates at 12:01 AM standard time thereafter. In the event of a **policy period** less than 1 year, the **policy year** will be the same as the **policy period**.

In the event of an odd term **policy period** longer than 1 year, the **policy year** is the period from the inception date to the next chronological date which precedes the expiration date by exactly 1 or more years at 12:01 AM standard time. If there are subsequent annual periods remaining in the **policy period** after that date at 12:01 AM standard time, such annual periods will each be a **policy year**.

However, if after the issuance of this Coverage Part, any **policy year** is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding **policy year**.

**Q.** **Pollutants** mean any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals, asbestos products, petroleum products and their by-products and waste. Waste includes material to be recycled, reconditioned or reclaimed. **Pollutants** does not mean noise. **Pollutants** include but are not limited to substances that are generally recognized in industry or government to be harmful or toxic to persons, property or the environment. regardless of whether the injury or damage is caused directly or indirectly by the **pollutants** and whether:

  **1.** The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

  **2.** The insured uses, generates or produces the **pollutant**.

**R.** **Subsidiary** means any entity in which the **named insured** owns, directly or indirectly, more than 50% of the outstanding securities or voting rights representing the present right to vote for election of directors, trustees, managers (if a limited liability company) or equivalent positions and any such entity in its capacity as a **debtor in possession**.

**S.** **Wrongful Act** has the meaning set forth in the applicable coverage part.

---

## SECTION II – EXCLUSIONS

**A.** Nuclear

We are not liable to pay, indemnify or defend any **claim** based upon, arising out of, in consequence of, or in any way involving the hazardous properties, including radioactive, toxic or explosive properties, of any nuclear material. Nuclear material means any source material, special nuclear material, or by-product materials as those terms are defined under the Atomic Energy Act of 1954 or any amendments thereto.

**B.** Pollution

We are not liable to pay, indemnify or defend any **claim** for:

  **1.** The actual, alleged, or threatened exposure to discharge, generation, storage, transportation, discharge, dispersal, seepage, migration, emission, release, treatment, removal, disposal or escape of **pollutants**; or

  **2.** Any request, demand, order or statutory or regulatory requirement that the **named insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **pollutants**; or

  **3.** Any demand by or on behalf of any governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, **pollutants**.

However, as it applies to any Directors and Officers Liability Coverage (including Educators Legal Liability), this exclusion shall not apply to any **claim** to which Insuring Agreement **A.** solely applies.

**C.** Prior Knowledge

We are not liable to pay, indemnify or defend any **claim** based upon, arising out of, or in consequence of, or in any way involving any **wrongful act** committed, attempted or allegedly committed or attempted prior to the **policy period** of the applicable Coverage Part if:

  **1.** Prior to the earlier of the following dates:

    **a.** The inception of the applicable Coverage Part;

    **b.** The inception of the original Coverage Part of which the applicable Coverage Part is a renewal or replacement; or

    **c.** The Continuity Date, if any, stated in the Declarations for the applicable Coverage Part;

    any **executive** knew that such **wrongful act** is or would reasonably be regarded as the basis of a **claim**; or

**2.** There is a previous policy under which the **insureds** are entitled to coverage for such **claim**.

**D.** Prior Notice

We are not liable to pay, indemnify or defend any **claim** based upon, arising out of, in consequence of, or in any way involving:

**1.** Any **wrongful act** or any fact, circumstance or situation which has been the subject of any accepted notice given prior to the **policy period** under any policy or coverage part of which this policy is a direct or indirect renewal or replacement; or

**2.** Any other **wrongful act** whenever occurring, which, together with a **wrongful act** which has been the subject of such accepted notice, would constitute **interrelated wrongful acts**.

**E.** Prior or Pending Proceeding

We are not liable to pay, indemnify or defend any **claim** based upon, arising out of, or in consequence of, or in any way involving any prior or pending demand or civil, criminal, administrative or regulatory proceeding against any **Insured** as of the Prior or Pending Date stated in the Declarations of the applicable coverage part or any fact, circumstance, situation, transaction or event underlying or alleged in such litigation, regardless of the legal theory asserted in such **claim**.

**F.** Telephone Consumer Protection Act

We are not liable to pay, indemnify or defend any **claim** for any actual or alleged violation of:

**1.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**2.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**3.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**G.** War and Military Action

We are not liable to pay, indemnify or defend any **claim** based upon, arising out of, in consequence of, or in any way involving:

**1.** War, including undeclared or civil war; or

**2.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**3.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these;

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

With respect to any action that comes within the terms of this exclusion and involves nuclear reaction or radiation, or radioactive contamination, this War and Military Action Exclusion supersedes Exclusion **A.** above.

---

## SECTION III - SEVERABILITY OF EXCLUSIONS

With respect to determining the applicability of the above Exclusions, no **wrongful act** or knowledge possessed by any one of the **insureds** shall be imputed to any other **insureds** to determine if coverage is available, unless indicated otherwise.

**ML 101 01 18**                                                                          **Page 3 of 9**

## SECTION IV - LIMITS OF INSURANCE, DEDUCTIBLES, MULTIPLE CLAIMS AND EXHAUSTION

**A.** If a single **claim** is covered under more than one Coverage Part, then our maximum liability for all **loss** resulting from such **claim** shall be the largest applicable Limit of Insurance available under any one of the applicable Coverage Parts.

**B.** The Deductibles for each Coverage Part apply separately to the respective Coverage Parts. If a single **claim** is covered under more than one Coverage Part, the applicable Deductibles shall be applied separately to the part of the **claim** covered by each Coverage Part but the sum of such Deductibles shall not exceed the largest applicable Deductible. The Deductibles shall be borne by the **insureds** uninsured and at their own risk.

**C.** If the aggregate Limit of Insurance for a particular Coverage Part is exhausted, then all of our obligations under that Coverage Part shall be deemed to be completely fulfilled and extinguished as of the date of such exhaustion. If the Shared Annual Aggregate Limit of Liability, if so set forth on the Common Policy Declarations, is exhausted, then all of our obligations under the policy for the remainder of the annual period as described in **SECTION IV.D.** below shall be deemed to be completely fulfilled and extinguished as of the date of such exhaustion.

**D.** The Limits of Insurance of each Coverage Part and the Shared Annual Aggregate Limit of Liability, if so set forth on the Common Policy Declarations, apply separately to each **policy year**. If the **policy period** of the respective Coverage Part is extended after issuance for an additional period of less than 12 months, the additional period will be deemed part of the last preceding period of the respective Coverage part for purposes of determining the Limits of Insurance.

**E.** Regardless of the number of policies or Coverage Parts involved, all **claims** based upon or arising out of the same **wrongful act** or any **interrelated wrongful acts** shall be considered a single **claim**. Each **claim** shall be deemed to be first made at the earliest of the following times:

    **1.** When notice of the earliest **claim** arising out of such **wrongful act** or **interrelated wrongful acts** is received in writing by an **insured** or by us, whichever comes first; or

    **2.** When notice of a **wrongful act** giving rise to such **claim** is given pursuant to Section **VI** of the General Provisions.

**F.** In the event that more than one of the **insureds** is included in the same **claim**, the total amount of **loss** resulting from such **claim** and the Deductible shall be apportioned pro-rata among the **insureds** in proportion to their respective **loss** unless otherwise mutually agreed upon by the **insureds** and us.

## SECTION V - DUTIES OF THE INSUREDS IN THE EVENT OF A CLAIM

As conditions precedent to coverage under this policy:

**A.** The **insureds** shall give us written notice of any **claim** made against any of the **insureds** for a **wrongful act** as soon as practicable after any **executive** of the **named insured** has knowledge of such **claim**, and shall cooperate and provide information as we may reasonably require, including but not limited to providing a description of the **claim**, the nature of the alleged **wrongful act**, the nature of the alleged injury, the names of the claimants, and the manner in which the **insureds** first became aware of the **claim**. As soon as practicable, the **insureds** shall furnish us with copies of reports, investigations, pleadings and other papers in connection with the **claim**.

**B.** The **insureds** shall provide us with all information, assistance and cooperation which we reasonably request and agree that in the event of a **claim** the **insureds** will do nothing which may prejudice our position or our potential or actual rights of recovery. The failure of any **insured person** to do so shall not impair the rights of any other **insured person** under this policy.

**C.** The **insureds** shall not settle any **claim**, incur any **defense costs** or otherwise assume any obligation or admit any liability with respect to any **claim** without our prior written consent. We shall be entitled to full information and all particulars we may request in order to reach a decision as to such consent. We shall not be liable for any settlement, **defense costs**, assumed obligation or admission to which we have not consented.

If the **insureds** fail to provide notice of any **claim** to us as required under this Section, we shall not be entitled to deny coverage for the **claim** based solely upon late notice unless we can demonstrate that our interests were materially prejudiced by reason of such late notice.

ML 101 01 18          **Page 4 of 9**

This Section does not apply to the Cincinnati Data Defender™ Coverage Form, the Cincinnati Network Defender™ Coverage Form or the Cincinnati Cyber Defense™ Coverage Form.

## SECTION VI - NOTICE OF A WRONGFUL ACT

If prior to the end of the **policy period** of the applicable Coverage Part, any of the **insureds** first become aware of a specific **wrongful act** they believe is likely to give rise to a **claim**, and if any of the **insureds** give us written notice as soon as practicable, but prior to the end of the **policy period** of the applicable Coverage Part, of:

**A.** The specific **wrongful act**;

**B.** The injury or damage which has or may result therefrom; and

**C.** The circumstances by which the **insureds** first became aware thereof;

then any **claim** subsequently made arising out of such **wrongful act** shall be deemed to have been made when notice of the **wrongful act** was first given.

## SECTION VII - DIRECTION OF CORRESPONDENCE TO US

All notices and other materials provided to us pursuant to the terms of this policy shall be directed to the Management Liability Claims Manager at one of the following addresses:

**A.** claimsmaindesk@cinfin.com

**B.** The Cincinnati Insurance Company
P.O. Box 145496
Cincinnati, OH 45250-5496

## SECTION VIII - APPLICATION

The **application** is the basis of this policy and is incorporated into and constitutes a part of this policy. It is agreed by the **insureds** that the statements in the **application** are their representations, that they are material and that this policy is issued in reliance upon the truth of such representations provided.

In the event that the **application** contains any misrepresentation or omission with respect to a specific **wrongful act** or the knowledge of any of the **insureds** of any matter which such **insured** has reason to believe may give rise to a future **claim** made with the intent to deceive or which materially affects the acceptability of the risk or hazard assumed by us, then no coverage shall be afforded for any **claim** based upon, arising from or in consequence of any such misrepresentation or omission. Such misrepresentation or omission shall not be imputed to any other **insureds** for purposes of determining the validity of this policy to such other **insureds** except:

    **1.** Any **insured person** who knew that the statement or representation was not true as of the inception date of coverage;

    **2.** The **organization** with respect to any **executive** who knew that the statement or representation was not true as of the inception date of coverage; and

    **3.** The **organization** if the signer of the **application** knew that the statement or representation was untrue.

We shall not be entitled under any circumstances to void or rescind this policy with respect to any **insured**.

## SECTION IX - CHANGES IN EXPOSURE

### A. Change in Ownership of Named Insured

If during the **policy period** of the applicable Coverage Part:

    **1.** The **named insured** consolidates with or merges into another entity such that such **named insured** is not the surviving entity;

    **2.** Another entity or person or group of entities and/or persons acting in concert acquires more than 50% ownership of the **named insured** or voting rights which result in ownership or voting control by the other organization(s) or person(s) of more than 50% of the outstanding securities or voting rights

representing the present right to vote for the election of directors, trustees or managers (if a limited liability company) of the **named insured**;

then, subject to all the other provisions of this policy, coverage under the applicable Coverage Part shall continue to apply to such **named insured** and its **insureds** until the end of the applicable **policy period** or any applicable **extended reporting period**, but only with respect to **claims** for **wrongful acts** committed, attempted or allegedly committed or attempted prior to such transaction. The **named insured** shall give written notice to us as soon as practicable, but in no event later than 90 days after such transaction.

### B.  Cessation of Subsidiaries

If during the **policy period** of the applicable Coverage Part any entity ceases to be a **subsidiary** as defined in the applicable Coverage Part, then, subject to all the other provisions of this policy, coverage under the applicable Coverage Part shall continue to apply to such entity and its **insureds** until the end of the applicable **policy period** or any applicable **extended reporting period**, but only with respect to **claims** for **wrongful acts** committed, attempted or allegedly committed or attempted prior to the date such entity ceases to be a **subsidiary**. The **named insured** shall give written notice to us as soon as practicable, but in no event later than 90 days after the entity ceases to be a **subsidiary**.

### C.  Acquisition or Formation of Entity

If during the **policy period** of the applicable Coverage Part the **named insured** newly acquires or forms another entity over which such **named insured** maintains more than 50% ownership for the purpose of coverage under the Coverage Part applicable to such **named insured**, the newly acquired or formed entity shall be deemed to be a **subsidiary**; however, coverage shall be excess of any indemnification or insurance otherwise available to such newly acquired or formed entity from any other source. Furthermore, coverage does not apply to **claims** for **wrongful acts** committed, attempted or allegedly committed or attempted prior to the date the **named insured** acquired or formed the entity unless we agree, after presentation of a complete application and all appropriate information, to provide coverage by endorsement for such **claims** and the **named insured** pays any additional premium we require for the endorsement.

---

## SECTION X - OTHER INSURANCE ISSUED BY ANOTHER INSURER

This insurance is primary except when all or any part of **loss** is also insured under any other valid and collectible prior or current policy. If any other insurance issued by another insurer (with the exception of insurance issued by us, any of our affiliated companies, or any of our predecessors or their affiliated companies) applies to any **claim**, then this insurance is excess over that other insurance, whether primary, excess, contingent or on any other basis, unless that other insurance was purchased specifically to apply excess over the limits provided in this policy. Furthermore, with respect to any coverage that may be provided for any **claim** for actual or alleged **personal injury**, such **claims** shall be specifically excess of any similar coverage provided by the **organization's** General Liability Policy.

When this policy is excess:

### A.  We will have no duty to defend any **claim** when any other insurer has that duty. If another insurer fails to defend and we incur costs as a result of such failure, we will be entitled to the **insureds'** rights against such other insurer; and

### B.  We will pay only our share of the amount of the **loss**, if any, that exceeds the sum of:

1.  The total amount that all such other insurance would pay for the **loss** in the absence of this policy; and

2.  The total of all deductible and self-insured amounts under all such other insurance.

---

## SECTION XI - SPOUSE AND LEGAL REPRESENTATIVE EXTENSION

The liability coverage parts in this policy will, subject to all other terms, conditions and exclusions of the applicable Coverage Part and the General Provisions, be extended to apply to **claims** for the **wrongful acts** of an **insured person** made against:

### A.  The spouse or **domestic partner** of an **insured person** but only to the extent such person is a party to any **claim** solely in such person's capacity as a spouse or **domestic partner** of an **insured person** and only if the **claim** seeks damages recoverable from marital community property jointly held by the **insured person** and the spouse or **domestic partner**, or property transferred from the **insured person** to the spouse; or

**ML 101 01 18**                                                                                           **Page 6 of 9**

**B.** Their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

We have no obligation to make any payment for **loss** in connection with any **claim** against a spouse, **domestic partner**, estates, heirs, legal representatives or assigns of an **insured person** for any actual or alleged, error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted or allegedly committed or attempted by such spouse, **domestic partner**, estates, heirs, legal representatives or assigns.

## SECTION XII - MEDIATION AND ALLOCATION

**A.** Any dispute including but not limited to tort claims or contract claims between an **insured** and us arising out of or relating to this policy shall be submitted to non-binding mediation prior to commencement of an action between the parties. The mediator shall be chosen by agreement. If the parties cannot agree upon a mediator, the mediator shall be chosen by the American Arbitration Association.

**B.** If both **loss** covered by this policy and loss not covered by this policy are incurred in a **claim** for which coverage is afforded, either because a **claim**:

    **1.** Against an **insured** includes both covered and uncovered matters, we will pay 100% of **defense costs** and all remaining loss will be allocated between covered **loss** and uncovered loss based upon the relative legal exposure to the parties to such matters; or

    **2.** Is made against both an **insured** and others, we will pay **defense costs** for our **insured**, and all remaining loss will be allocated between covered **loss** and uncovered loss based upon the relative legal exposure to the parties to such matters.

**C.** If we and the **insureds** cannot agree as to matters in **B.** above prior to a judgment or finding in the civil or administrative proceeding dealing with **claims** against the **insureds**, the parties agree that they will, to the extent it is within their control, require that the allocation between covered **loss** and uncovered loss is made in such civil or administrative proceeding. Such efforts shall include but are not limited to the submission of special interrogatories to the finder of fact in such proceeding. Such efforts shall not require us to become a party to such civil or administrative proceeding.

**D.** Notwithstanding **C.** above, if we and the **insureds** cannot agree as to matters in Section **B.** above prior to a judgment or finding in any civil or administrative proceeding in which such issues are decided, we may at any time before or after mediation under **A.** above settle all **claims** against any or all **insureds**. Following such settlement, any dispute between us and the **insureds** as to the proper allocation of covered and uncovered matters under **B.** above shall be submitted to non-binding mediation prior to the commencement of an action between the parties. In any event, only one mediation as to the same issues shall be required.

## SECTION XIII - ACTION AGAINST US

**A.** No action shall be taken against us unless, as a condition precedent thereto, there has been full compliance with all of the terms of this policy and until the obligation of the **insureds** to pay shall have been finally determined, either by an adjudication against them or by written agreement of the **insureds**, the claimant and us. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Bankruptcy or insolvency of an **insured** or of an **insured's** estate shall not relieve us of any of our obligations hereunder.

**B.** No person or organization shall have any right under this policy to join us as a party to any **claim**. Neither the **insureds** nor their legal representative shall implead us in any **claim**.

This Section does not apply to the Cincinnati Data Defender™ Coverage Form, the Cincinnati Network Defender™ Coverage Form or the Cincinnati Cyber Defense™ Coverage Form.

## SECTION XIV - SUBROGATION

In the event of any payment under this policy, we shall be subrogated to all of the rights to recovery of the **insureds** to the extent of such payment. The **insureds** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights, including the execution of such documents as may be necessary to enable us to effectively bring suit in the name of the **insureds**.

## SECTION XV - CHANGES IN THIS POLICY

No change or modification of, or assignment of interest under this policy shall be effective except when made by us through a written endorsement to this policy.

## SECTION XVI - CONFORMITY TO STATUTE

Any terms of this policy which are in conflict with the terms of any applicable laws construing this policy are hereby amended to conform to such laws.

## SECTION XVII - ENTIRE AGREEMENT

By acceptance of this policy, we and the **insureds** agree that this policy (including the **application**) and any written endorsements attached hereto constitute the entire agreement between the parties.

## SECTION XVIII - REPRESENTATION BY NAMED INSURED

The first **named insured** shall act on behalf of all of the **insureds** in purchasing this policy and for any purposes under the policy.

## SECTION XIX - EXTENDED REPORTING PERIODS

A. Upon termination of any Coverage Parts for any reason, other than nonpayment of premium, the **named insured** shall be provided a 90 day Automatic Extended Reporting Period and have the option to replace the 90 day Automatic Extended Reporting Period with a 12 month Optional Extended Reporting Period. The **named insured** may also request an Optional Extended Reporting Period with a term longer than 12 months, which may be provided solely at our discretion.

    1. Automatic Extended Reporting Period

        A 90 day Automatic Extended Reporting Period is automatically provided without additional charge. The Automatic Extended Reporting Period starts immediately after the end of the **policy period** of the applicable Coverage Part.

    2. Optional Extended Reporting Periods

        a. The **named insured** shall have the option to purchase a 12 month Extended Reporting Period to replace the 90 day Automatic Extended Reporting Period for an additional premium equal to 75% of the expiring annual premium for the applicable Coverage Part.

        b. Additional Optional Extended Reporting Periods may be available for an additional premium charge if an Extended Reporting Period longer than 12 months is desired. It is solely our decision whether to permit the first **named insured** to purchase an Extended Reporting Period with a term longer than 12 months.

        The first **named insured** must give us a written request of their intent to purchase an Optional Extended Reporting Period within 60 days after the **policy period** of the applicable Coverage Part or that option shall terminate. The Optional Extended Reporting Period will not go into effect unless the first **named insured** pays the additional premium promptly when due.

B. The Extended Reporting Periods do not extend the **policy period** or change the scope of coverage provided. They extend the **claims** reporting period.

C. The Extended Reporting Periods extend coverage to **claims** first made during the length of time covered by the applicable Extended Reporting Period provided the **wrongful act** was committed, attempted or allegedly committed or attempted prior to the end of the **policy period** of the applicable Coverage Part, and all such **claims** shall be subject to all other terms, conditions and exclusions of the applicable Coverage Part and the General Provisions. Such **claims** must be reported in writing to us prior to the expiration of the applicable Extended Reporting Period.

D. The Extended Reporting Period, regardless of length does not reinstate or increase the Limits of Insurance of the applicable Coverage Part or the Shared Annual Aggregate Limit of Liability, if so set forth on the Common Policy Declarations. Our total liability shall not exceed the Limit of Insurance shown in the applicable Declarations for the last **policy year** in which coverage is provided hereunder.

ML 101 01 18    **Page 8 of 9**

E.  Any Extended Reporting Period will immediately terminate on the effective date and time of any other insurance issued to the **insureds** which replaces this insurance. The entire premium for any Extended Reporting Period shall be fully earned at the commencement of any Extended Reporting Period.

F.  If the terms under this section are invoked under the Cincinnati Data Defender™ Coverage Part, the Cincinnati Network Defender™ Coverage Part or the Cincinnati Cyber Defense™ Coverage Part, the provisions contained in this Section shall apply only to the following Insuring Agreements:

1.  Insuring Agreement **B** - Defense and Liability of the Cincinnati Data Defender™ Coverage Part;

2.  Insuring Agreement **B** - Network Security and Electronic Media Liability of the Cincinnati Network Defender™ Coverage Part; or

3.  Insuring Agreements **E** - Data Compromise Liability, **F** - Network Security Liability and **G** - Electronic Media Liability of the Cincinnati Cyber Defense™ Coverage Part.

## SECTION XX - COVERAGE TERRITORY

This policy applies to any **claim** for a **wrongful act** committed, attempted or allegedly committed or attempted anywhere in the world unless indicated otherwise. However, if insurance provided by this policy would be in violation of any United States economic or trade sanctions, such insurance shall be null and void.

This Section does not apply to the Cincinnati Data Defender™ Coverage Form, the Cincinnati Network Defender™ Coverage Form or the Cincinnati Cyber Defense™ Coverage Form.

## SECTION XXI - LIBERALIZATION

If we adopt any revision that would broaden the coverage under this insurance and would be effective during the **policy period** without additional premium, the broadened coverage will immediately apply to this insurance as of the latter of:

1.  The date we implemented the change in the headquarters state which is the basis upon which the policy was issued; or

2.  The date the applicable Coverage Part became effective.

## SECTION XXII - PARENT COMPANY FRANCHISOR EXTENSION

Upon written request of the president, chairperson or equivalent position of the **named insured,** we shall extend coverage under this policy to **defense costs** resulting from any **claim** made against a parent company or franchisor of the **named insured** or any **subsidiary** but only if and so long as:

1.  The **claim** arises out of a **wrongful act** actually or allegedly committed solely by an **insured**;

2.  The **insured** is included as a co-defendant in addition to the parent company or franchisor; and

3.  The **insured** as well as the parent company or franchisor are represented by the same counsel in connection with such **claim.**

For the purposes of this extension, a parent company or franchisor shall include:

1.  Any entity other than a natural person which owns more than 50% of the outstanding securities or voting rights representing the present right to vote for election of directors, trustees, managers (if a limited liability company) or equivalent of a **named insured** or **subsidiary**; or

2.  Any franchisor who has granted to an **insured** under a franchise agreement any franchise or franchise rights to allow the **insured** to operate as a franchisee or a franchised dealer.

This Section does not apply to the Cincinnati Data Defender™ Coverage Form, the Cincinnati Network Defender™ Coverage Form or the Cincinnati Cyber Defense™ Coverage Form.

| Policy Number: | EMP 051 90 08 | Effective Date: 01-01-2019 |
|---|---|---|

# SUMMARY OF PREMIUMS CHARGED

### THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

EMPLOYMENT PRACTICES LIABILITY                        $ 4,216

CRIME COVERAGE                                        $ 3,682

$

$

$

$

$

$

$

$

$

$

$

$

$

$

$

TERRORISM COVERAGE                                   $ 28

Installment Charge                                   $

Total $ 7,926

| Payment Plan | First Installment | Remaining Installments |
|---|---|---|
| ANNUAL | $ 7,926 | $ 7,926 |

**ALL OTHER TERMS AND CONDITIONS REMAINS UNCHANGED**

ML 400 01 16

# POLICYHOLDER NOTICE
# TERRORISM INSURANCE COVERAGE

Your policy (or the policy proposed to you) contains coverage for certain losses caused by terrorism.

## Premium:

In accordance with the federal Terrorism Risk Insurance Act, we are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act.

• The portion of your premium that is attributable to coverage for terrorist acts certified under the Act is

$ 28_____.

## Federal Participation:

The Act also requires us to provide disclosure of federal participation in payment of terrorism losses.

• Under your policy, any losses caused by certified acts of terrorism would be partially reimbursed by the United States Government, Department of Treasury, under a formula established by federal law. Under this formula, the federal share equals a percentage, as specified in the Schedule below, of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

• **Schedule:**

| Federal Share of Terrorism Losses | |
|---|---|
| **Percentage** | **Calendar Year** |
| 85% | 2015 |
| 84% | 2016 |
| 83% | 2017 |
| 82% | 2018 |
| 81% | 2019 |
| 80% | 2020 |

## Cap on Insurer Participation:

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**NOTE:** **THIS NOTICE IS PROVIDED TO SATISFY THE REQUIREMENTS UNDER THE TERRORISM RISK INSURANCE ACT FOR POLICYHOLDER DISCLOSURE: (1) AT THE TIME OF OUR OFFER OF COVERAGE AND (2) AT THE TIME COVERAGE IS ISSUED.**

IA 4234 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ARKANSAS CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**PILLAR POLICY PROGRAM**

The following provision is added:

**CANCELLATION AND NONRENEWAL**

**A.** The first **named insured** may cancel this policy or any of its Coverage Parts by mailing or delivering to us advance written notice of cancellation.

**B.** We may cancel this policy or any of its Coverage Parts by mailing or delivering to the first **named insured** written notice of cancellation at least:

   **1.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **2.** 60 days before the effective date of cancellation if we cancel for any other reason. Such notice may only be sent for cancellation effective at a policy anniversary at the end of a **policy year.**

**C.** Cancellation of Policies in Effect More than 60 Days

   **1.** If this policy has been in effect more than 60 days or is a renewal policy, we may cancel only for one or more of the following reasons:

      **a.** Nonpayment of premium;

      **b.** Fraud or material misrepresentation made by the **named insured** or with the **named insured's** knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

      **c.** The occurrence of a material change in the risk which substantially increases any hazard insured against after policy issuance;

      **d.** Violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or its occupancy which substantially increases any hazard insured against under the policy;

      **e.** Nonpayment of membership dues in those cases where our by-laws, agreements or other legal instruments require payment as a condition of the issuance and maintenance of the policy; or

      **f.** A material violation of a material provision of the policy.

   **2.** If we cancel for:

      **a.** Nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first **named insured** at least 10 days before the effective date of cancellation.

      **b.** Any other reason, we will mail or deliver notice of cancellation to the first **named insured** at least 20 days before the effective date of cancellation.

**D.** We will mail or deliver our notice to the first **named insured's** last mailing address known to us.

**E.** Notice of cancellation will state the effective date of cancellation. The **policy period** will end on that date.

**F.** If this policy or any of its Coverage Parts are cancelled, we will send the first **named insured** any premium refund due. We will refund the pro rata unearned premium. The cancellation will be effective even if we have not made or offered a refund.

**G.** If notice is mailed, proof of mailing will be sufficient proof of notice.

ML 4152 AR 09 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 1 of 2

**H.**  If we decide not to renew this policy or a particular Coverage Part, we will mail to the first **named insured** shown in the Declarations written notice of nonrenewal at least 60 days before:

    **1.**  The expiration date of this policy; or

    **2.**  The end of a **policy year**, if it is a policy written for a term of more than one year.

However, we are not required to send this notice if nonrenewal is due to your failure to pay any premium required for renewal.

We will mail our notice to the first **named insured's** mailing address last known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

All other provisions of the policy remain unchanged except as herein expressly modified.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ARKANSAS CHANGES - PILLAR POLICY PROGRAM

This endorsement modifies insurance provided under the following:

**GENERAL PROVISIONS APPLICABLE TO ALL LIABILITY COVERAGE PARTS**

A.  Paragraph **D.** of **SECTION XIX - EXTENDED REPORTING PERIODS** of the **GENERAL PROVISIONS APPLICABLE TO ALL LIABILITY COVERAGE PARTS** is deleted in its entirety and replaced by the following:

   **D.**  If the Optional Extended Reporting Period endorsement is in effect, the Limit of Insurance available during the Optional Extended Reporting Period shall be no less than the greater of:

   **a.**  The amount of coverage remaining in the expiring Aggregate Limit of Insurance for the applicable Coverage Part for the **policy period**; or

   **b.**  Fifty percent (50%) of the full Aggregate Limit of Insurance for the applicable Coverage Part that was in effect at the policy inception.

   The Limit of Insurance for the Optional Extended Reporting Period shall be solely for **claims** first made during the Optional Extended Reporting Period.

All other provisions of the policy remain unchanged except as herein expressly modified.

ML 4153 AR 09 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ARKANSAS CHANGES - CRIME COVERAGE

This endorsement modifies insurance provided under the following:

**CRIME COVERAGE**
**CRIME EXPANDED COVERAGE (XC®)**

**A.**  The following is added to **SECTION VI - CONDITIONS**, Part **A.:**

**Multi-Year Policies**

We may issue this policy for a term in excess of twelve months with the premium adjusted on an annual basis in accordance with our rates and rules.

**B.**  **SECTION VI - CONDITIONS**, **A.9. Legal Action Against Us**, **c.** is deleted in its entirety and replaced by the following

**c.**  Unless brought within 5 years from the date you **discovered** the loss.

**C.**  The last paragraph of **SECTION VI - CONDITIONS**, **A.18. Valuation - Settlement a.(3)** is replaced by the following:

If we cannot agree with you upon the actual cash value or the cost of repair or replacement, the value or cost may be determined by arbitration.

Either party may make a written request for an arbitration. However, arbitration will take place only if both we and you agree, voluntarily, to have the value or cost of the property arbitrated. Moreover, an arbitration decision will not be binding on either party. However, even if there is arbitration, we will still retain our right to deny the claim.

All other provisions of the policy remain unchanged except as herein expressly modified.

ML 4154 AR 09 16                                 Includes copyrighted material of Insurance
                                                 Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

<div style="border:1px solid black; text-align:center">

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

</div>

This endorsement modifies insurance provided under the following:

**GENERAL PROVISIONS APPLICABLE TO ALL LIABILITY COVERAGE PARTS**

**A.  SECTION I - DEFINITIONS** is amended to add the following:

**Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a **certified act of terrorism** include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.  CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**C.  APPLICATION OF OTHER EXCLUSIONS**

The terms and limitations of any terrorism exclusion, or the inapplicability, omission or absence of a terrorism exclusion does not serve to create coverage for any **loss** which would otherwise be excluded under this policy, such as **losses** excluded by:

1.  Exclusions that address war, warlike action, insurrection, rebellion, revolution, military action, nuclear hazard, nuclear materials, nuclear reaction, radiation, or radioactive contamination;

2.  Exclusions that address pollutants, contamination, deterioration, fungi or bacteria; or

3.  Any other exclusion,

regardless if the **certified act of terrorism** contributes concurrently or in any sequence to the **loss**.

**D.  SUNSET CLAUSE**

If the federal Terrorism Risk Insurance Act expires or is repealed, then this endorsement is null and void for any act of terrorism that takes place after the expiration or repeal of the Act.

All other provisions of the policy remain unchanged except as herein expressly modified.

<div style="text-align:center">

Includes copyrighted material of Insurance
Services Office, Inc., and American Association
of Insurance Services, Inc., with their permission.

</div>

ML 458 01 16

# ACKNOWLEDGMENT OF DEFENSE COSTS INCLUDED
# WITHIN THE LIMITS OF INSURANCE - ARKANSAS

This form must be signed by an authorized representative of the first named insured listed in the Declarations of the policy referenced below and returned to your agent. The following Coverage Parts contain defense costs within the Limits of Insurance. One or more of these Coverage Parts is a part of your policy.

**BANKERS PROFESSIONAL LIABILITY COVERAGE**
**CINCINNATI CYBER DEFENSE**<sup>TM</sup>
**CINCINNATI DATA DEFENDER**<sup>TM (when written at limits of $500,000 or $1,000,000)</sup>
**CINCINNATI NETWORK DEFENDER**<sup>TM (when written at limits of $500,000 or $1,000,000)</sup>
**COMMUNITY ASSOCIATION DIRECTORS AND OFFICERS LIABILITY COVERAGE**
**EDUCATORS LEGAL LIABILITY COVERAGE**
**EMPLOYMENT PRACTICES LIABILITY COVERAGE**
**FIDUCIARY LIABILITY COVERAGE**
**FINANCIAL INSTITUTIONS DIRECTORS AND OFFICERS LIABILITY COVERAGE**
**HEALTHCARE INSTITUTIONS DIRECTORS AND OFFICERS LIABILITY COVERAGE**
**NONPROFIT ORGANIZATION DIRECTORS AND OFFICERS LIABILITY COVERAGE**
**PRIVATELY HELD COMPANY DIRECTORS AND OFFICERS LIABILITY COVERAGE**
**PUBLICLY TRADED COMPANY DIRECTORS AND OFFICERS LIABILITY COVERAGE**
**TRUST SERVICES ERRORS AND OMISSIONS COVERAGE**

I understand and acknowledge that this policy has Limits of Insurance which may be reduced or completely eliminated by payments for defense costs and claims expenses.

In the event that an Additional Defense Limit of Insurance is purchased on any coverage part, the Additional Defense Limit must be completely exhausted before the coverage part Limit of Insurance is reduced by defense costs. If the Additional Defense Limit of Insurance for any coverage part is unlimited, the coverage part Limit of Insurance will not be reduced by defense costs.

POLICY NUMBER:    EMP 051 90 08

AGENT:    ROGERS INSURANCE AGENCY, INC. 03-017

NAMED INSURED(S):

TNT CABLE CONTRACTORS INC.

_____    _____
PRINTED NAME OF INDIVIDUAL AUTHORIZED TO SIGN                    TITLE

Signature _____    Date Signed: _____

ML 498 AR 09 17

# NOTICE OF LOSS CONTROL SERVICES

The Cincinnati Insurance Companies provide certain loss prevention services to policyholders at no additional cost. These services are designed to prevent or reduce the impact of potential loss causing events or conditions related to the type(s) of insurance coverage you have purchased from us. One of these services that you can receive is described below:

Employment Practices Liability (EPL) Toll-Free Hot Line

Have a question on how to handle an employment situation? Simply call The Cincinnati Insurance Companies Employment Connection at 1-888-811-3427 for assistance. We offer policyholders an unlimited number of calls seeking advice on employment policies and procedures.

The services provided are advisory in nature. While this program is offered as a resource in developing or maintaining a loss prevention program, you should consult competent legal counsel to design and implement your own program. No liability is assumed by reason of the services, access or information provided. All services are subject to change without notice. Use of the EPL Toll-Free Hot Line will not be deemed to satisfy any notice of claim or notice of wrongful act provision contained in any policy.

**IA 4427 02 13**

# THE CINCINNATI INSURANCE COMPANY
# THE CINCINNATI CASUALTY COMPANY
# THE CINCINNATI INDEMNITY COMPANY

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company.  The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

**IP 446 08 01**

# SIGNATURE ENDORSEMENT

IN WITNESS WHEREOF, this policy has been signed by our President and Secretary in the City of Fairfield, Ohio, but this policy shall not be binding upon us unless countersigned by an authorized representative of ours. The failure to countersign does not void coverage in Arizona, Virginia and Wisconsin.

Secretary                                                 President

The signature on any form, endorsement, policy, declarations, jacket or application other than the signature of the President or Secretary named above is deleted and replaced by the above signatures.

IA 4338 05 11

# ARKANSAS NOTICE

In compliance with Act 197 of 1987, the following information must be provided to you the insured:

The Cincinnati Insurance Company
P.O. Box 145496
Cincinnati, Ohio 45250-5496
Telephone: (513) 870-2000

The Cincinnati Casualty Company
P.O. Box 145496
Cincinnati, Ohio 45250-5496
Telephone: (513) 870-2000

The Cincinnati Indemnity Company
P.O. Box 145496
Cincinnati, Ohio 45250-5496
Telephone: (513) 870-2000

The Cincinnati Life Insurance Company
Policyholder Service Department
P.O. Box 145496
Cincinnati, Ohio 45250-5496
Telephone: (513) 870-2280

Agency Name and Address:

ROGERS INSURANCE AGENCY, INC.
2809 W AJAX AVE STE 300
ROGERS, AR 72758-6226

Phone Number:    479-636-4551

If we at    THE CINCINNATI INSURANCE COMPANY        fail to provide you with reasonable and

adequate service, you should feel free to contact:

Arkansas Insurance Department
Consumer Services Division
1200 West Third Street
Little Rock, Arkansas 72201-1904
1-800-852-5494

IP 403 AR 06 03

# The Cincinnati Insurance Company

A Stock Insurance Company

# EMPLOYMENT PRACTICES LIABILITY
# COVERAGE PART DECLARATIONS

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. TO THE EXTENT IT IS NOT OTHERWISE INDICATED, THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY DEFENSE COSTS, AND DEFENSE COSTS WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR DEFENSE COSTS OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Policy Number: **EMP 051 90 08**

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

| | | |
|---|---|---|
| Limit of Insurance: | $ 1,000,000 | in the aggregate |
| Optional Third Party Liability Sublimit | $ 1,000,000 | in the aggregate |
| Wage and Hour Defense Sublimit | $ 100,000 | in the aggregate |
| Immigration Defense Sublimit | $ 100,000 | in the aggregate |
| Additional Defense Limit of Insurance: | $ NOT COVERED | in the aggregate |

Deductibles:
$ 10,000    each **claim** under Insuring Agreement **A** (Employment Practices)
$ 10,000    each **claim** under Insuring Agreement **B** (Third Party)

| | |
|---|---|
| Retroactive Date: | N/A |
| Prior or Pending Date: | 06-28-2017 |
| Continuity Date: | 06-28-2017 |

Forms and endorsements applicable to this coverage part:
```
ML112     01/18 EMPLOYMENT PRACTICES LIABILITY COVERAGE
ML4195    09/18 NOTICE OF POST-EVENT SERVICES - WORKPLACE VIOLENCE EXPENSE
                COVERAGE
ML205     01/18 WORKPLACE VIOLENCE EXPENSE COVERAGE ENDORSEMENT
```

ML 512 01 16

Page 1 of 2
EMP 051 90 08

01-29-2019 16:03

ML 512 01 16

EMP 051 90 08

# EMPLOYMENT PRACTICES LIABILITY COVERAGE

## TABLE OF CONTENTS

**Coverage Part Provision:**                                                         **Begins on Page:**

SECTION I - INSURING AGREEMENTS ...............................................................................................2

SECTION II - DEFINITIONS ..............................................................................................................2

SECTION III - EXCLUSIONS ............................................................................................................6

SECTION IV - SEVERABILITY OF EXCLUSIONS ...............................................................................7

SECTION V - LIMIT OF INSURANCE AND DEDUCTIBLE ...................................................................7

SECTION VI - DEFENSE, INVESTIGATION AND SETTLEMENT ...........................................................8

SECTION VII - SUPPLEMENTARY PAYMENTS....................................................................................8

# EMPLOYMENT PRACTICES LIABILITY COVERAGE

THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. TO THE EXTENT IT IS NOT OTHERWISE INDICATED, THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY DEFENSE COSTS, AND DEFENSE COSTS WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR DEFENSE COSTS OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.

## SECTION I - INSURING AGREEMENTS

**A.** We will pay on behalf of the **insureds** all **loss** which they shall be legally obligated to pay resulting from any **employment claim** or **immigration claim** first made during the **policy period**, or any **extended reporting period** included in or endorsed to the policy, for an **employment wrongful act** or **immigration wrongful act**.

**B.** If Optional Third Party Liability is purchased as set forth in the Employment Practices Liability Coverage Part Declarations, we will pay on behalf of the **insureds** all **loss** which they shall be legally obligated to pay resulting from any **third party claim** first made during the **policy period**, or any **extended reporting period** included in or endorsed to the policy, for a **third party wrongful act**.

We will have the right and duty to select counsel and defend the **insureds** against any such **claim**.

## SECTION II - DEFINITIONS

Where set forth in bold type in this Coverage Part, whether in singular or in plural, the following terms shall have the meanings indicated.

**A.** **Benefits** means perquisites, fringe benefits, payments in connection with an employee benefit plan and any other payment, other than salary, wages or commissions to or for the benefit of an **employee** arising out of the employment relationship.

**B.** **Claim** means an **employment claim,** an **immigration claim** or a **third party claim**.

**C.** **Defense costs** means reasonable and necessary fees, costs, and expenses incurred by us or with our consent on behalf of the **insureds** or reimbursed to any of the **insureds** by us, resulting solely from the investigation, adjustment, defense and appeal of any **claim**. **Defense costs** includes, but is not limited to, the cost of expert consultants and witnesses, and premiums for appeal, injunction, attachment or supersedeas bonds (but not the obligation to furnish such bonds).

**Defense costs** shall not include:

**1.** Salaries, wages, fees, overhead or expenses of our employees or any **insureds**, directors, officers, trustees or employees, other than that portion of our employed attorneys' fees, salaries and expenses allocated to a specific **claim**;

**2.** Any amount covered by the duty to defend obligation of any other insurer; or

**3.** Any pre-tender fees, costs or expenses.

**D.** **Employee** includes, but is not limited to, full-time, part-time, seasonal, volunteer, contingent or leased workers as determined by the federal, state or local law. **Employee** does not include independent contractors as determined by federal, state or local law.

**E.** **Employment claim** means:

**1.** A written demand for monetary damages or non-monetary relief;

**2.** A civil proceeding commenced by the filing of a complaint or similar pleading;

**3.** A formal administrative or regulatory proceeding commenced by the filing of a complaint, charge, formal investigative order or similar document;

**4.** An arbitration, mediation or similar alternative dispute resolution proceeding (other than a labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement) if the **insured** is required or agrees to participate in such proceeding with our written consent;

ML 112 01 18                                                                                            **Page 2 of 8**

5. In the context of an audit conducted by the Office of Federal Contract Compliance Programs, a Notice of Violation or Order to Show Cause or written demand for monetary or non-monetary relief, commenced by the receipt by an **insured** of such Notice, Order or written demand; or

6. A written request to toll or waive a statute of limitations relating to a potential **employment claim** described in Definitions **E.1.** through **E.5.** above;

which is brought by or on behalf of any past, present or prospective **employee(s)** of the **organization** against any of the **insureds**, including any appeal therefrom.

F. **Employment wrongful act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed for:

1. Wrongful discharge, dismissal or termination of employment, including constructive discharge;

2. Breach of any oral, written or implied employment contract or quasi-employment contract other than any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement;

3. Employment related misrepresentation;

4. Violation of any federal, state or local law that concerns employment discrimination:

   a. Including:

      1. Sexual harassment involving unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature; or

      2. Workplace bullying or workplace harassment of a non-sexual nature;

   b. That:

      1. Are made a condition of employment;

      2. Are used as a basis for employment decisions; or

      3. Create a work environment that is intimidating, offensive, hostile or interferes with performance;

5. Wrongful failure to employ or promote;

6. Wrongful demotion;

7. Wrongful discipline;

8. Wrongful deprivation of a career opportunity;

9. Negligent hiring, supervision, promotion or retention;

10. Negligent evaluation;

11. Employment related **personal injury**;

12. Wrongful failure to grant tenure;

13. Employment related wrongful infliction of emotional distress;

14. Violation of the Family Medical Leave Act;

15. Wrongful **retaliation**;

16. Wrongful denial of training, denial or deprivation of seniority or evaluation;

17. Failure to adopt, create, provide or enforce adequate workplace or employment practices and procedures; or

18. Wrongful handling of any background check which is issued or expected to be used or collected in whole or in part for the purpose of serving as a factor in any employment related activities, including but not limited to any violation of the Fair Credit Reporting Act;

including any actual or alleged assault, battery, or loss of consortium in connection with Subparagraphs **1.** through **18.** above.

G. **Executive** means any natural person who was, now is or shall become the chairperson, president, chief executive officer, chief financial officer, executive director, in-house general counsel or person of equivalent position to any of the foregoing of the **organization**.

ML 112 01 18                                                                                            **Page 3 of 8**

**H.**  **Immigration claim** means any criminal investigation of any **insured** by any governmental agency for any actual or alleged hiring of illegal aliens.

**I.**  **Immigration wrongful act** means any actual or alleged violation of the Immigration Reform and Control Act of 1986 or any amendments to or rules, regulations or orders promulgated pursuant to it, or similar provisions of any federal, state, or local statutory or common law.

**J.**  **Insured** means the **organization** and the **insured persons**.

**K.**  **Insured persons** means:

1.  All natural persons who were, now are, or shall become an officer or a duly elected or appointed member of the board of directors, trustees, regents, managers, governors, a **LLC manager** or an equivalent position of the **organization**;

2.  All natural persons who were, now are, or shall become an **employee** or committee member, whether or not they were, are or shall be compensated, of the **organization**;

3.  All natural persons who were, now are, or shall become members or volunteers of the **organization**, if the **organization** is nonprofit in nature,  while acting on behalf of the **organization** in a voluntary capacity at the direction of the board of directors, trustees, regents, managers, governors, or an equivalent position; and

4.  Any natural person who is an independent contractor as determined by federal, state or local law, but only while acting in the capacity as such for the **organization** pursuant to an express written agreement between the independent contractor, or any entity on behalf of the independent contractor, and the **organization** and only if the **organization** agrees in writing to provide indemnification to such independent contractor; provided, however, that any coverage under this Coverage Part for any such independent contractor shall be excess of any indemnification or insurance otherwise available to such independent contractor from any other source;

but only for acts with respect to their duties for or service to the **organization**.

**L.**  **LLC manager** means any natural person who was, now is or shall become a manager, member of the board of managers or member of the **organization** that is a limited liability company but only with respect to the conduct of the limited liability company's business.  However, any member of a limited liability company who is a passive investor not involved in the operations of the limited liability company is not a **LLC manager.**

**M.**  **Loss** means **defense costs** and the total amount of monetary damages which the **insured** becomes legally obligated to pay on account of any **claim** for a **wrongful act** with respect to which coverage hereunder applies, including damages (including back pay and front pay), judgments, settlements, prejudgment and postjudgment interest, and punitive or exemplary damages or the multiplied portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary or multiplied damages.

**Loss** shall not include any amount for which an **insured** is not financially liable, compensation earned in the course of employment but not paid by an **insured** or matters which are deemed uninsurable under the law pursuant to which this Coverage Part shall be construed.

**Loss** shall not include, (other than **defense costs**):

1.  **Benefits** or the equivalent value, however, this provision does not apply to **loss** resulting solely from wrongful termination of employment;

2.  Amounts, which arise out of, are based upon, or are attributable to the employment reinstatement of the claimant by an **insured** or the continued employment of the claimant;

3.  Future compensation, including salary or **benefits** for an **employee**, if the **insured** is ordered in accordance with a judgment or other final adjudication but fails to reinstate the claimant as an **employee**;

4.  That part of any express contract of employment or an express obligation to make payments in the event of the termination of employment;

5.  Salary, wages, commissions, **benefits** or other monetary payments which constitute severance payments or payments pursuant to a notice period;

6.  Civil or criminal fines or penalties imposed by law, liquidated damages (other than liquidated damages awarded under the Age Discrimination in Employment Act or the Equal Pay Act), payroll or other taxes, or damages, penalties or types of relief deemed uninsurable under applicable law;

**ML 112 01 18**                                                                                       **Page 4 of 8**

7. Future compensation, including salary or **benefits** for an **employee** who has been or will be hired, promoted or reinstated to employment pursuant to a settlement, court order, judgment, award or other resolution of a **claim**; or

8. Medical, pension, disability, life insurance, stock option or other **employee** type **benefit**.

**N.** **Organization** means the **named insured** and any **subsidiary**.

**O.** **Personal injury** means injury, other than bodily injury, arising out of one or more of the following offenses:

1. False arrest, detention or imprisonment;

2. Oral or written publication of material that libels, slanders or defames a past, present or prospective **employee**;

3. Invasion of a past, present or prospective **employee's** right of privacy;

4. Malicious prosecution; or

5. Abuse of process.

**P.** **Property damage** means:

1. Injury or damage, of any nature, to tangible or intangible property, including all resulting loss of use of that property; or

2. Loss of or loss of use of tangible or intangible property that is not otherwise injured or damaged.

**Q.** **Retaliation** means any actual or alleged wrongful termination of employment or other adverse employment action against a claimant with respect to any person's exercise or attempted exercise of rights protected by law, refusal to violate any law, disclosure or threat of disclosure to a superior or to any governmental agency actual or alleged violations of the law, or having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law.

**R.** **Third party** means any natural person who is not an **employee** of the **organization**.

**S.** **Third party claim** means:

1. A written demand for monetary damages or non-monetary relief;

2. A civil proceeding commenced by the filing of a complaint or similar pleading;

3. A formal administrative or regulatory proceeding commenced by the filing of a complaint, charge, formal investigative order or similar document;

4. An arbitration, mediation or similar alternative dispute resolution proceeding (other than a labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement) if the **insured** is required or agrees to participate in such proceeding with our written consent; or

5. A written request to toll or waive a statute of limitations relating to a potential **third party claim** described in Definitions **S.1.** through **S.4.** above;

which is brought by or on behalf of any **third party** against any of the **insureds**, including any appeal therefrom.

**T.** **Third party wrongful act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted or allegedly committed or attempted on or after the Retroactive Date, if any, set forth in the Employment Practices Liability Coverage Part Declarations and prior to the end of the **policy period** by an **insured** or any person for whose acts the **insured** is legally liable for:

1. Discrimination by any **insured** against a **third party** in violation of any applicable federal, state or local statute, ordinance or common law;

2. Sexual or other harassment by any **insured**, including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature against a **third party** which violates the civil rights of the **third party**; or

3. **Wrongful eviction** when arising out of discrimination or harassment by any **insured** against a **third party** in violation of any applicable federal, state or local statute, ordinance or common law.

**U.** **Wrongful act** means an **employment wrongful act**, an **immigration wrongful act** or a **third party wrongful act** attempted or allegedly committed or attempted on or after the Retroactive Date, if any, set

ML 112 01 18                                                                                                          Page 5 of 8

forth in the Employment Practices Liability Coverage Part Declarations and prior to the end of the **policy period** by an **insured** or any person for whose acts the **organization** is legally liable.

**V.  Wrongful eviction** means the act of dispossessing or attempting to dispossess a **third party** of real property to which such **third party** claims a right to occupy, and such real property is owned, operated or controlled by the **organization**.

---

## SECTION III - EXCLUSIONS

The descriptions in the headings of these exclusions are solely for convenience and form no part of the terms and conditions of coverage.

**A.** Exclusions applicable to **loss** other than **defense costs**:

**1.**  Americans With Disabilities Act

This insurance does not apply to **loss** incurred by the **insured** in making physical changes, modifications, alterations, or improvements as part of an accommodation pursuant to the Americans With Disabilities Act or similar provisions of any federal, state or local statutory or common law; provided, however, that this exclusion does not apply to **defense costs**.

**2.**  Wage and Hour (with Defense Sublimit)

This insurance does not apply to any **claim** based upon, arising out of or in consequence of the Fair Labor Standards Act (except the Equal Pay Act) or any amendments to or rules, regulations or orders promulgated pursuant to it, or similar provisions of any federal, state, or local statutory or common law; except we shall reimburse the **insureds** for up to a maximum payment of the Wage and Hour Defense Sublimit set forth in the Employment Practices Liability Coverage Part Declarations in **defense costs** that exceed the Deductible amount as set forth in the Employment Practices Liability Coverage Part Declarations.  Any payment of **defense costs** shall be part of and not in addition to the Limit of Insurance set forth in the Employment Practices Liability Coverage Part Declarations and such payment reduces the Limit of Insurance.  However, this exclusion shall not apply to an **employment claim** for retaliatory treatment of a person with respect to actual or threatened disclosures by such person of any actual or alleged violation of the Fair Labor Standards Act by any **insured**.

**3.**  Immigration (with Defense Sublimit)

This insurance does not apply to any **immigration claim** except we shall reimburse the **insureds** for up to a maximum payment of the Immigration Claim Defense Sublimit set forth in the Employment Practices Liability Coverage Part Declarations in **defense costs** that exceed the Deductible amount as set forth in the Employment Practices Liability Coverage Part Declarations.  Any payment of **defense costs** shall be part of and not in addition to the Limit of Insurance set forth in the Employment Practices Liability Coverage Part Declarations and such payment reduces the Limit of Insurance.  However, this exclusion shall not apply to an **employment claim** for retaliatory treatment of a person with respect to actual or threatened disclosures by such person of any actual or alleged violation of the Immigration Reform and Control Act of 1986 by any **insured**.

**B.** Exclusions applicable to all **loss**:

**1.**  Bodily Injury/Property Damage

We are not liable to pay, indemnify or defend any **claim** for actual or alleged:

    **a.**  Bodily injury, sickness, disease, or death of any person; or

    **b.**  **Property damage**, including, but not limited to, physical injury, loss of or loss of use of currency or any negotiable or non-negotiable instruments or contracts representing money.

**2.**  COBRA, ERISA, NLRA, OSHA and WARN (with Retaliation Carve Back)

This insurance does not apply to any **claim** based upon, arising out of or in consequence of the:

    **a.**  Consolidated Omnibus Budget Reconciliation Act of 1985;

    **b.**  Employee Retirement Income Security Act of 1974 (except Section 510 thereof);

    **c.**  National Labor Relations Act (including the Labor Management Relations Act of 1947);

    **d.**  Occupational Safety and Health Act;

   **e.** Worker Adjustment and Retraining Notification Act; or

any amendments to or rules, regulations or orders promulgated pursuant to these laws, or similar provisions of any federal, state, or local statutory or common law. However, this exclusion shall not apply to any **employment claim** for retaliatory treatment of a person with respect to actual or threatened disclosures by such person of any actual or alleged violation of the acts described in **B.2.a.** through **B.2.e.** above by any **insured.**

**3.** Contractual (Other than Employment Contract)

We are not liable to pay, indemnify or defend any **claim** based upon, arising out of or in consequence of any actual or alleged liability of any **insureds** under the terms, conditions or warranties of any oral or written contract or agreement, except:

   **a.** To the extent the liability would have attached to any such **insureds** in the absence thereof; or

   **b.** With respect to any **claim** for breach of an employment contract.

**4.** Labor Relations

We are not liable to pay, indemnify or defend any **claim** based upon, arising out of or in consequence of any actual or alleged:

   **a.** Labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement; or

   **b.** **Wrongful act** committed, attempted, or allegedly committed or attempted concurrent with or after a lockout, strike, picket line, replacement or other similar actions resulting from labor disputes or labor negotiations.

**5.** Workers' Compensation, Unemployment, Social Security and Disability (with Retaliation Carve Back)

We are not liable to pay, indemnify or defend any **claim** based upon, arising out of or in consequence of any actual or alleged obligation of any **insured** under any workers' compensation, unemployment insurance, social security, disability benefits or similar law, or derivative actions arising out of any of these. However, this exclusion shall not apply to any **employment claim** for retaliatory treatment by an **insured** due to the exercise of rights granted under any such law.

---

## SECTION IV - SEVERABILITY OF EXCLUSIONS

With respect to determining the applicability of the above exclusions, no **wrongful act** or knowledge possessed by any one of the **insureds** shall be imputed to any other **insureds** to determine if coverage is available, unless indicated otherwise.

---

## SECTION V - LIMIT OF INSURANCE AND DEDUCTIBLE

**A.** The Limits of Insurance shown in the Employment Practices Liability Coverage Part Declarations and the rules below fix the most we will pay regardless of the number of:

   **1.** **Insureds** under this Coverage Part;

   **2.** **Claims** made or suits brought on account of **wrongful acts** or otherwise; or

   **3.** Persons or organizations making **claims** or bringing suits.

**B.** Our liability shall apply only to that part of each covered **loss** which is excess of the Deductible amount specified in the Employment Practices Liability Coverage Part Declarations and such Deductible amount shall be borne by the **insureds.**

**C.** **Defense costs** incurred by us or by the **insured** with our written consent are part of and not in addition to the Limit of Insurance set forth in the Employment Practices Liability Coverage Part Declarations and the Shared Annual Aggregate Limit of Liability, if so set forth in the Common Policy Declarations. **Defense costs** we pay shall reduce such Limits of Insurance. **Defense costs** paid by the **insureds** shall be applied against the Deductible.

**D.** Our maximum aggregate liability for all **loss** resulting from all **claims** under this Coverage Part shall be the Limit of Insurance set forth in the Employment Practices Liability Coverage Part Declarations, subject to the Shared Annual Aggregate Limit of Liability, if so set forth in the Common Policy Declarations.

**ML 112 01 18**                                                                    **Page 7 of 8**

E.  If an Additional Defense Limit of Insurance is set forth in the Employment Practices Liability Coverage Part Declarations, **defense costs** will apply first to and reduce the Additional Defense Limit of Insurance. The Additional Defense Limit of Insurance will be in addition to, and not part of the Limit of Insurance set forth in the Employment Practices Liability Coverage Part Declarations. The Additional Defense Limit of Liability is applicable to **defense costs** only. **Defense costs** paid by the **insureds** shall be applied against the Deductible.

Upon exhaustion of the Additional Defense Limit of Insurance, **defense costs** shall be part of and not in addition to the Limit of Insurance set forth in the Employment Practices Liability Coverage Part Declarations. **Defense costs** we pay shall reduce the Limit of Insurance.

## SECTION VI - DEFENSE, INVESTIGATION AND SETTLEMENT

A.  We will have the right and duty to select counsel and defend the **insureds** against any **claim**; however, we will have no duty to defend the **insureds** against any **claim** to which this insurance does not apply.

B.  We may make any investigation we deem necessary and may, with the consent of the **insureds** named in connection with the **claim**, make any settlement of any **claim** we deem expedient. If the **insureds** withhold consent to such settlement, our liability for all **loss** in connection with such **claim** shall not exceed:

1.  The amount of the proposed settlement plus **defense costs** incurred up to the date of the **insured's** refusal to consent to the proposed settlement; plus

2.  90% of any settlement or judgment in excess of the proposed settlement amount referenced in **B.1.** above plus 90% of any **defense costs** incurred after the date the **insureds** refused to consent to the proposed settlement, subject in all events to the applicable Limit of Insurance and Deductible for such **claim**. The remaining 10% of any settlement or judgment in excess of the proposed settlement amount referenced in **B.1.** above plus 10% of any **defense costs** incurred after the date the **insureds** refused to consent to the proposed settlement shall be borne by the **insureds**, uninsured and at their own risk.

C.  Our right and duty to defend end when we have used up the applicable Limit of Insurance in the defense or payment of damages, judgments or settlements of covered **claims**.

## SECTION VII - SUPPLEMENTARY PAYMENTS

We will pay with respect to any **claim** we defend:

A.  The cost of any appeal bond, attachment bond, or any similar bond, but only for bond amounts within the applicable Limit of Insurance; provided, however, that we do not have to apply for or furnish these bonds; and

B.  All reasonable expenses incurred by the **insured** at our request to assist us in the investigation or defense of the **claim**, including actual loss of earnings up to $250 a day because of time off from work.

These payments will not reduce the Limits of Insurance.

# NOTICE OF POST-EVENT SERVICES -
# WORKPLACE VIOLENCE EXPENSE COVERAGE

Your policy includes valuable workplace violence expense coverage from the Cincinnati Insurance Company. In the event of a workplace violence event, you may utilize an outside vendor to assist your organization. The associated workplace violence expenses may be covered by your policy. The Cincinnati Insurance Company has teamed with Black Swan Solutions. A crisis management service through Empathia, Inc., Black Swan is a leader in supporting organizations affected by crisis and can provide policyholders with services following a workplace violence event. While you have no obligation to use the services of Black Swan Solutions, they are available if you want to consult with an outside vendor. However, if you opt to use the services of another organization or choose not to utilize an outside vendor, it will not impact your coverage under the Workplace Violence Expense Coverage Endorsement.

Black Swan Solutions offers a variety of services. Some expenses related to these services may be covered by your policy and some may not. The final determination of any expense reimbursement coverage will come from the Cincinnati Insurance Company. Black Swan Solutions can also engage in pre-event consulting, but such an expense would be borne solely by you.

**The Cincinnati Insurance Company Workplace Violence Post-Event Hotline**, monitored by Black Swan Solutions, is available to help your organization and your employees after a workplace violence event. You can contact Black Swan Solutions any time of day or night by calling our 24 hour hotline: 877-841-1082.

**Use of Workplace Violence Post-Event Hotline will not be deemed to satisfy any notice of claim or notice of workplace violence event provision contained in any policy. The selection of a vendor is the independent choice of the policyholder. The Cincinnati Insurance Company makes no warranties and assumes no liability for services, products, or loss control measures provided by Black Swan Solutions.**

ML 4195 09 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

---

## WORKPLACE VIOLENCE EXPENSE COVERAGE ENDORSEMENT

---

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY COVERAGE**

**A.** **SECTION I - INSURING AGREEMENTS** is amended to include the following Insuring Agreement:

We will reimburse all **workplace violence expenses** sustained by the **organization** as a result of a **workplace violence event** occurring during the **policy period** and reported to us as soon as practicable but in no event after the expiration of the policy or any **extended reporting period** included in or endorsed to this Coverage Part.

**B.** **SECTION II - DEFINITIONS** is amended to include the following:

1. **Business interruption expense** means:

    a. The excess of revenues over expenses, if any, that would have been earned by the **organization** had no **workplace violence event** occurred; and

    b. The reasonable costs and expenses that would not have been incurred by the **organization** except for a **workplace violence event** with the sole purpose to:

        (1) Continue the activities necessary for the organization to resume operations to substantially the same level that existed immediately prior to the **workplace violence event**; or

        (2) Reduce any **business interruption expense**, not to exceed the amount of actual reduction of such **business interruption expense.**

    However, **business interruption expense** shall be reduced by all recoveries, other insurance, suretyship and other indemnity which cover **business interruption expense.** Additionally, **business interruption expense** shall be reduced by the amount by which the organization reasonably could have reduced **business interruption expense** but fails to do so.

2. **Premises** means any building, facility or property occupied by the **organization** in the conduct of its business.

3. **Workplace violence event** means any actual or alleged intentional and unlawful:

    a. Use of deadly force; or

    b. Threat of deadly force involving the display of a lethal weapon;

    which occurs on **premises** and which did or could result in bodily injury or death to an **insured person.**

4. **Workplace violence expenses** means the reasonable fees, costs and expenses for:

    a. The services of an independent security consultant for up to 90 days following a **workplace violence event**;

    b. The services of an independent public relations consultant for up to 90 days following a **workplace violence event**;

    c. Counseling services provided to **insured persons** by an independent counselor on **premises** for up to 120 days following a **workplace violence event**;

    d. Independent security guards and other reasonable costs to secure the **premises** for up to 30 days following a **workplace violence event**;

    e. The services of an independent forensic analyst for up to 120 days following a **workplace violence event**;

---

ML 205 01 18                                                                                                          Page 1 of 2

  **f.** The salaries or wages for up to 90 days following a **workplace violence event** paid by the **organization** to **insured persons** victimized by a **workplace violence event** and unable to work because of such **workplace violence event**; and

  **g.** **Business interruption expense** until the earlier of 90 days following a **workplace violence event** or until the organization restores operations to substantially the same level that existed immediately prior to the **workplace violence event.**

**C.** **SECTION III - EXCLUSIONS, B.** is amended to include the following:

 **1.** <u>Robbery</u>

  This insurance does not apply to any **workplace violence event** based upon, arising out of or in consequence of a purpose of demanding money, securities or property.

 **2.** <u>Riot</u>

  This insurance does not apply to any **workplace violence event** based upon, arising out of or in consequence of riot, civil upheaval or civil unrest.

**D.** **SECTION V - LIMIT OF INSURANCE AND DEDUCTIBLE** is amended to include the following:

 **1.** The Aggregate Limit of Insurance for all **workplace violence expenses** paid under this endorsed Insuring Agreement shall be $ <u>250,000</u> per **policy year** and shall apply as indicated by ☒ below:

  ☒ This separate limit shall be in addition to and not part of the Limit of Insurance set forth in the Employment Practices Liability Coverage Part Declarations.

  ☐ This sublimit shall be part of and not in addition to the Limit of Insurance set forth in the Employment Practices Liability Coverage Part Declarations.

 **2.** No deductible shall apply to **workplace violence expenses** paid under this endorsed Insuring Agreement.

All other provisions of the policy remain unchanged except as herein expressly modified.

**ML 205 01 18**                              **Page 2 of 2**

# The Cincinnati Insurance Company

A Stock Insurance Company

# CRIME
# COVERAGE PART DECLARATIONS

Policy Number: **EMP 051 90 08**

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

Employee Benefit Plan(s) Included as Insureds:

ALL PLANS GOVERNED BY ERISA AND SPONSORED SOLELY BY THE NAMED INSURED AS OF THE EFFECTIVE DATE OF COVERAGE AND ANY SUCH PLAN ADDED DURING THE POLICY PERIOD.

| Insuring Agreements | Limit of Insurance | Deductible Amount |
|---|---|---|
| A.  Employee Theft | $1,500,000 | $5,000 |
| B.  Forgery or Alteration | $1,500,000 | $5,000 |
| C.  Inside the Premises | $1,500,000 | $5,000 |
| D.  Outside the Premises | $1,500,000 | $5,000 |
| E.  Computer Fraud | $1,500,000 | $5,000 |
| F.  Funds Transfer Fraud | $1,000,000 | $5,000 |
| G.  Money Orders and Counterfeit Money | $1,500,000 | $5,000 |
| H.  Clients' Property | $1,500,000 | $5,000 |
| I.  Claim Expense | $25,000 | $0 |

Forms and endorsements applicable to this coverage part:

| | | |
|---|---|---|
| ML116 | 01/16 | CRIME COVERAGE |
| ML201 | 05/16 | SOCIAL ENGINEERING FRAUD |
| ML436 | 01/18 | ADD CREDIT, DEBIT OR CHARGE CARD FORGERY |

ML 516 0118

01-29-2019 16:03

# CRIME COVERAGE

## TABLE OF CONTENTS

**Coverage Part Provision:**                                                                 **Begins on Page:**

SECTION I - INSURING AGREEMENTS ......................................................................................2

SECTION II - DEFINITIONS ....................................................................................................3

SECTION III - EXCLUSIONS ...................................................................................................6

SECTION IV - LIMIT OF INSURANCE ......................................................................................9

SECTION V - DEDUCTIBLE .....................................................................................................9

SECTION VI - CONDITIONS .....................................................................................................9

# CRIME COVERAGE

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Crime Coverage Part Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

## SECTION I - INSURING AGREEMENTS

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Crime Coverage Part Declarations and applies to loss that you sustain resulting directly from an **occurrence** taking place at any time which is **discovered** by you during the Policy Period shown in the Common Policy Declarations or during the period of time provided in the Extended Period to Discover Loss Condition **A.7.**:

**A.** Employee Theft

We will pay for loss of or damage to **money**, **securities** and **other property** resulting directly from **theft** committed by an **employee**, whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, **theft** shall also include forgery.

**B.** Forgery or Alteration

**1.** We will pay for loss resulting directly from **forgery** or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in **money** that are:

**a.** Made or drawn by or drawn upon you; or

**b.** Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

**2.** If you are sued for refusing to pay any instrument covered in Paragraph **B.1.**, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

**C.** Inside the Premises

**1.** We will pay for loss of:

**a.** **Money** and **securities** inside the **premises** or **banking premises**:

**(1)** Resulting directly from **theft** committed by a person present inside such **premises** or **banking premises**; or

**(2)** Resulting directly from disappearance or destruction.

**b.** Or damage to **other property**:

**(1)** Inside the **premises** resulting directly from an actual or attempted **robbery** of a **custodian**; or

**(2)** Inside the **premises** in a safe or vault resulting directly from an actual or attempted **safe burglary**.

**2.** We will pay for loss from damage to the **premises** or its exterior resulting directly from an actual or attempted **theft** of **money** and **securities** or **robbery** or **safe burglary** of **other property**, if you are the owner of the **premises** or are liable for damage to it.

**3.** We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the **premises** resulting directly from an actual or attempted **theft** of, **robbery**, **safe burglary** or unlawful entry into those containers.

**D.** Outside the Premises

    **1.** We will pay for loss of **money** and **securities** outside the **premises** in the care and custody of a **messenger** or an armored motor vehicle company resulting directly from **theft**, disappearance or destruction.

    **2.** We will pay for loss of or damage to **other property** outside the **premises** in the care and custody of a **messenger** or an armored motor vehicle company resulting directly from an actual or attempted **robbery**.

**E.** Computer Fraud

We will pay for loss of or damage to **money, securities** and **other property** resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the **premises** or **banking premises**:

    **1.** To a person (other than a **messenger**) outside those **premises**; or

    **2.** To a place outside those **premises**.

**F.** Funds Transfer Fraud

We will pay for loss of **funds** resulting directly from a **fraudulent instruction** directing a financial institution to transfer, pay or deliver **funds** from your **transfer account**.

**G.** Money Orders and Counterfeit Money

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, **money** or services:

    **1.** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

    **2.** **Counterfeit money** that is acquired during the regular course of business.

**H.** Clients' Property

We will pay for loss of or damage to **money, securities** and **other property** sustained by your **client** resulting directly from **theft** committed by an identified **employee** acting alone or in collusion with other persons.

**I.** Claim Expense

We will pay for **claim expenses** incurred by you to establish the existence and amount of any covered loss under any Insuring Agreement under this Coverage Part.

---

## SECTION II - DEFINITIONS

Where set forth in bold type in this Coverage Part, whether in singular or in plural, the following terms shall have the meanings indicated.

**A.** **Banking premises** means the interior of that portion of any building occupied by a banking institution or similar safe depository.

**B.** **Claim expense** means necessary and reasonable expenses incurred and paid by you to establish the existence and amount of any covered loss. **Claim expense** shall not include any of your internal corporate fees or costs (direct or indirect) including, but not limited to, wages and salaries. **Claims expenses** shall not include expenses incurred by any **client**.

**C.** **Client** means any entity for whom you perform services under a written contract.

**D.** **Counterfeit money** means an imitation of **money** that is intended to deceive and to be taken as genuine.

**E.** **Custodian** means you, or any of your partners or **members**, or any **employee** while having care and custody of property inside the **premises**, excluding any person while acting as a **watchperson** or janitor.

**F.** **Discover** or **discovered** means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Discover** or **discovered** also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this insurance.

**G.  Employee:**

    **1.  Employee** means:

        **a.**  Any natural person:

            **(1)**  While in your service and for the first 30 days immediately after termination of service, unless such termination is due to **theft** or any other dishonest act committed by the **employee**;

            **(2)**  Who you compensate directly by salary, wages or commissions; and

            **(3)**  Who you have the right to direct and control while performing services for you;

        **b.**  Any natural person who is furnished temporarily to you:

            **(1)**  To substitute for a permanent **employee** as defined in Paragraph **1.a.**, who is on leave; or

            **(2)**  To meet seasonal or short-term work load conditions;

            while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the **premises**;

        **c.**  Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **1.b.**;

        **d.**  Any natural person who is:

            **(1)**  A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any **employee benefit plan**; and

            **(2)**  A director or trustee of yours while that person is engaged in handling **funds** or **other property** of any **employee benefit plan**;

        **e.**  Any natural person who is a former **employee**, partner, **member**, **manager**, director or trustee retained as a consultant while performing services for you;

        **f.**  Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property outside the **premises**;

        **g.**  Any **employee** of an entity merged or consolidated with you prior to the effective date of this insurance; or

        **h.**  Any of your **managers**, directors or trustees while:

            **(1)**  Performing acts within the scope of the usual duties of an **employee**; or

            **(2)**  Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

    **2.  Employee** does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph **G.1.**

**H.  Employee benefit plan** means any welfare or pension benefit plan shown in the Crime Coverage Part Declarations that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

**I.  Forgery** means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**J.  Fraudulent instruction** means:

1. An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

2. A written instruction (other than those described in Insuring Agreement **B.**) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

3. An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an **employee** but which was in fact fraudulently transmitted by someone else without your or the **employee's** knowledge or consent.

**K.** **Funds** means **money** and **securities**.

**L.** **Manager** means a person serving in a directorial capacity for a limited liability company.

**M.** **Member** means an owner of a limited liability company represented by its membership interest, who also may serve as a **manager**.

**N.** **Messenger** means you, or a relative of yours, or any of your partners or **members**, or any **employee** while having care and custody of property outside the **premises**.

**O.** **Money** means a medium of exchange in current use including:

1. Currency, coins, bank notes and bullion; and

2. Travelers checks, register checks and money orders held for sale to the public.

**P.** **Occurrence** means:

1. Under Insuring Agreements **A.** and **H.**:

   a. An individual act;

   b. The combined total of all separate acts whether or not related; or

   c. A series of acts whether or not related;

   committed by an **employee** acting alone or in collusion with other persons, during the Policy Period shown in the Common Policy Declarations, before such Policy Period or both.

2. Under Insuring Agreement **B.**:

   a. An individual act;

   b. The combined total of all separate acts whether or not related; or

   c. A series of acts whether or not related;

   committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Common Policy Declarations, before such Policy Period or both.

3. Under All Other Insuring Agreements:

   a. An individual act or event;

   b. The combined total of all separate acts or events whether or not related; or

   c. A series of acts or events whether or not related;

   committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Common Policy Declarations, before such Policy Period or both.

**Q.** **Other property** means any tangible property other than **money** and **securities** that has intrinsic value. **Other property** does not include computer programs, electronic data or any property specifically excluded under this insurance.

**R.** **Premises** means the interior of that portion of any building you occupy in conducting your business.

**S.** **Robbery** means the unlawful taking of property from the care and custody of a person by one who has:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

1. Caused or threatened to cause that person bodily harm; or

2. Committed an obviously unlawful act witnessed by that person.

**T. Safe burglary** means the unlawful taking of:

1. Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

2. A safe or vault from inside the **premises**.

**U. Securities** means negotiable and nonnegotiable instruments or contracts representing either **money** or property and includes:

1. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

2. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include **money**.

**V. Theft** means:

1. Under Insuring Agreement **H.**, the unlawful taking of property to the deprivation of your **client**.

2. Under All Other Insuring Agreements, the unlawful taking of property to the deprivation of the Insured.

**W. Transfer account** means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of **funds**:

1. By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

2. By means of written instructions (other than those described in Insuring Agreement **B.**) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

**X. Watchperson** means any person you retain specifically to have care and custody of property inside the **premises** and who has no other duties.

---

## SECTION III - EXCLUSIONS

The descriptions in the headings of these exclusions are solely for convenience and form no part of the terms and conditions of coverage.

**A.** Acts Committed by You, Your Partners or Your Members

This insurance does not cover loss resulting from **theft** or any other dishonest act committed by:

1. You; or

2. Any of your partners or **members**;

whether acting alone or in collusion with other persons.

**B.** Acts of Employees Learned of by You Prior to the Policy Period

This insurance does not cover loss caused by an **employee** if the **employee** had also committed **theft** or any other dishonest act prior to the effective date of this insurance and you or any of your partners, **members**, **managers**, officers, directors or trustees, not in collusion with the **employee**, learned of that **theft** or dishonest act prior to the Policy Period shown in the Common Policy Declarations.

**C.** Acts of Employees, Managers, Directors, Trustees or Representatives

This insurance does not cover loss resulting from **theft** or any other dishonest act committed by any of your **employees**, **managers**, directors, trustees or authorized representatives:

1. Whether acting alone or in collusion with other persons; or

2. While performing services for you or otherwise;

ML 116 01 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 6 of 15

except when covered under Insuring Agreements **A.** or **H.**

**D.**  Confidential Information

This insurance does not cover loss resulting from:

**1.**  The unauthorized disclosure of your confidential information including, but not limited to, patents, trade secrets, processing methods or customer lists; or

**2.**  The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information or similar non-public information.

**E.**  Governmental Action

This insurance does not cover loss resulting from seizure or destruction of property by order of governmental authority.

**F.**  Indirect Loss

This insurance does not cover loss that is an indirect result of an **occurrence** covered by this insurance including, but not limited to, loss resulting from:

**1.**  Your inability to realize income that you would have realized had there been no loss of or damage to **money**, **securities** or **other property**.

**2.**  Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

**3.**  Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance, except when covered under Insuring Agreement **I.**

**G.**  Legal Fees, Costs and Expenses

This insurance does not cover fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement **B.**

**H.**  Nuclear Hazard

This insurance does not cover loss or damage resulting from nuclear reaction or radiation or radioactive contamination, however caused.

**I.**  Pollutants

This insurance does not cover loss or damage caused by or resulting from pollutants. Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the pollutants and whether:

**1.**  You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**2.**  You use, generate or produce the pollutant.

**J.**  War and Military Action

This insurance does not cover loss or damage resulting from:

**1.**  War, including undeclared or civil war;

**2.**  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**3.**  Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**K.**   Inventory Shortages

Insuring Agreement **A.** does not cover loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**1.**   An inventory computation; or

**2.**   A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**L.**   Trading

Insuring Agreement **A.** does not cover loss resulting from trading, whether in your name or in a genuine or fictitious account.

**M.**   Warehouse Receipts

Insuring Agreement **A.** does not cover loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

**N.**   Accounting or Arithmetical Errors or Omissions

Insuring Agreements **C.** and **D.** do not cover loss resulting from accounting or arithmetical errors or omissions.

**O.**   Exchanges or Purchases

Insuring Agreements **C.** and **D.** do not cover loss resulting from the giving or surrendering of property in any exchange or purchase.

**P.**   Fire

Insuring Agreements **C.** and **D.** do not cover loss or damage resulting from fire, however caused, except:

**1.**   Loss of or damage to **money** and **securities**; and

**2.**   Loss from damage to a safe or vault.

**Q.**   Money Operated Devices

Insuring Agreements **C.** and **D.** do not cover loss of property contained in any money operated device unless the amount of **money** deposited in it is recorded by a continuous recording instrument in the device.

**R.**   Motor Vehicles or Equipment and Accessories

Insuring Agreements **C.** and **D.** do not cover loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

**S.**   Transfer or Surrender of Property

Insuring Agreements **C.** and **D.** do not cover loss of or damage to property after it has been transferred or surrendered to a person or place outside the **premises** or **banking premises**:

**1.**   On the basis of unauthorized instructions;

**2.**   As a result of a threat to do bodily harm to any person;

**3.**   As a result of a threat to do damage to any property;

**4.**   As a result of a threat to introduce a denial of service attack into your computer system;

**5.**   As a result of a threat to introduce a virus or other malicious instruction into your computer system which is designed to damage, destroy or corrupt data or computer programs stored within your computer system;

**6.**   As a result of a threat to contaminate, pollute or render substandard your products or goods; or

**7.**   As a result of a threat to disseminate, divulge or utilize:

   **a.**   Your confidential information; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

   **b.** Weaknesses in the source code within your computer system.

But, this Exclusion does not apply under Insuring Agreement **D.** to loss of **money**, **securities** or **other property** while outside the **premises** in the care and custody of a **messenger** if you had no knowledge of any threat at the time the conveyance began or had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**T.**   Vandalism

Insuring Agreements **C.** and **D.** do not cover loss from damage to the **premises** or its exterior, or to any safe, vault, cash register, cash box, cash drawer or **other property** by vandalism or malicious mischief.

**U.**   Voluntary Parting of Title to or Possession of Property

Insuring Agreements **C.** and **D.** do not cover loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**V.**   Credit Card Transactions

Insuring Agreement **E.** does not cover loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

**W.**   Funds Transfer Fraud

Insuring Agreement **E.** does not cover loss resulting from a **fraudulent instruction** directing a financial institution to transfer, pay or deliver **funds** from your **transfer account**.

**X.**   Inventory Shortages

Insuring Agreement **E.** does not cover loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

   **1.**   An inventory computation; or

   **2.**   A profit and loss computation.

**Y.**   Computer Fraud

Insuring Agreement **F.** does not cover loss resulting from the use of a computer to fraudulently cause a transfer of **money**, **securities** or **other property**.

## SECTION IV - LIMIT OF INSURANCE

The most we will pay for all loss resulting directly from an **occurrence** is the applicable Limit of Insurance shown in the Crime Coverage Part Declarations.

If any loss is covered under more than one Insuring Agreement or Coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or Coverages.

## SECTION V - DEDUCTIBLE

We will not pay for loss resulting directly from an **occurrence** unless the amount of loss exceeds the Deductible Amount shown in the Crime Coverage Part Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

## SECTION VI - CONDITIONS

**A.**   CONDITIONS APPLICABLE TO ALL INSURING AGREEMENTS

   **1.**   Additional Premises or Employees

      If, while this insurance is in force, you establish any additional **premises** or hire additional **employees**, other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such **premises** and **employees** shall automatically be covered under this insurance. Notice to us of an increase in the number of **employees** or **employees** need not be given

Includes copyrighted material of Insurance

Services Office, Inc., with its permission.

and no additional premium need be paid for the remainder of the Policy Period shown in the Common Policy Declarations.

**2.** Concealment, Misrepresentation or Fraud

This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This insurance;

**b.** The property covered under this insurance;

**c.** Your interest in the property covered under this insurance; or

**d.** A claim under this insurance.

**3.** Consolidation - Merger or Acquisition

If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

**a.** You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this insurance to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

**b.** For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this insurance shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all **occurrences** causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

**4.** Cooperation

You must cooperate with us in all matters pertaining to this insurance as stated in its terms and conditions.

**5.** Duties in the Event of Loss

After you **discover** a loss or a situation that may result in loss of or damage to **money**, **securities** or **other property** you must:

**a.** Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement **A.**, **B.** or **H.**) involves a violation of law, you must also notify the local law enforcement authorities.

**b.** Submit to examination under oath at our request and give us a signed statement of your answers.

**c.** Produce for our examination all pertinent records.

**d.** Give us a detailed, sworn proof of loss within 120 days.

**e.** Cooperate with us in the investigation and settlement of any claim.

**6.** Employee Benefit Plans

**a.** The **employee benefit plans** shown in the Crime Coverage Part Declarations (hereafter referred to as Plan) are included as Insureds under Insuring Agreement **A.**

**b.** If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance for Insuring Agreement **A.** that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

**c.** With respect to loss sustained or **discovered** by any such Plan, Insuring Agreement **A.** is replaced by the following:

We will pay for loss of or damage to **funds** and **other property** resulting directly from fraudulent or dishonest acts committed by an **employee**, whether identified or not, acting alone or in collusion with other persons.

d. If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

e. If two or more Plans are insured under this insurance, any payment we make for loss:

(1) Sustained by two or more Plans; or

(2) Of commingled **funds** or **other property** of two or more Plans;

resulting directly from an **occurrence** will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total Limit of Insurance of all Plans sustaining loss.

f. The Deductible Amount applicable to Insuring Agreement **A.** does not apply to loss sustained by any Plan.

7. <u>Extended Period to Discover Loss</u>

We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is **discovered** by you:

a. No later than 60 days from the date of that cancellation. However, this extended period to **discover** loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

b. No later than 1 year from the date of that cancellation with regard to any **employee benefit plans**.

8. <u>Joint Insured</u>

a. If more than one Insured is named in the Crime Coverage Part Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

b. If any Insured, or partner, **member** or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

c. An **employee** of any Insured is considered to be an **employee** of every Insured.

d. If this insurance or any of its coverages is cancelled as to any Insured, loss sustained by that Insured is covered only if it is **discovered** by you:

(1) No later than 60 days from the date of that cancellation. However, this extended period to **discover** loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

(2) No later than 1 year from the date of that cancellation with regard to any **employee benefit plans**.

e. We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

f. Payment by us to the first Named Insured for loss sustained by any Insured, other than an **employee benefit plan**, shall fully release us on account of such loss.

9. <u>Legal Action Against Us</u>

You may not bring any legal action against us involving loss:

a. Unless you have complied with all the terms of this insurance;

b. Until 90 days after you have filed proof of loss with us; and

c. Unless brought within 2 years from the date you **discovered** the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**10.** Liberalization

If we adopt any revision that would broaden the coverage under this insurance and would be effective during the Policy Period without additional premium, the broadened coverage will immediately apply to this insurance as of the latter of:

**a.** The date we implemented the change in the headquarters state which is the basis upon which the policy was issued; or

**b.** The date the applicable Coverage Part became effective.

**11.** Other Insurance

If other valid and collectible insurance is available to you for loss covered under this insurance, our obligations are limited as follows:

**a.** Primary Insurance:

When this insurance is written as primary insurance, and:

**(1)** You have other insurance subject to the same terms and conditions as this insurance, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit of Insurance shown in the Crime Coverage Part Declarations bears to the total limit of all insurance covering the same loss.

**(2)** You have other insurance covering the same loss other than that described in Paragraph **a.(1),** we will only pay for the amount of loss that exceeds:

**(a)** The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

**(b)** The Deductible Amount shown in the Crime Coverage Part Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this insurance.

**b.** Excess Insurance:

**(1)** When this insurance is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this insurance.

**(2)** However, if loss covered under this insurance is subject to a Deductible, we will reduce the Deductible Amount shown in the Crime Coverage Part Declarations, by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

**12.** Ownership of Property; Interests Covered

The property covered under this insurance is limited to property:

**a.** That you own or lease; or

**b.** That you hold for others whether or not you are legally liable for the loss of such property.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

**13.** Policy Bridge - Discovery Replacing Loss Sustained

**a.** If this insurance replaces insurance that provided you with an extended period of time after cancellation in which to discover loss and which did not terminate at the time this insurance became effective:

**(1)** We will not pay for any loss that occurred during the Policy Period of that prior insurance which is **discovered** by you during the extended period to **discover** loss, unless the amount of loss exceeds the Limit of Insurance and Deductible Amount of that prior insurance. In that case, we will pay for the excess loss subject to the terms and conditions of this policy.

**(2)** However, any payment we make for the excess loss will not be greater than the difference between the Limit of Insurance and Deductible Amount of that prior insurance and the Limit

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

of Insurance shown in the Crime Coverage Part Declarations. We will not apply the Deductible Amount shown in the Crime Coverage Part Declarations to this excess loss.

**b.** The Other Insurance Condition **A.11.** does not apply to this Condition.

**14.** Records

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

**15.** Recoveries

**a.** Any recoveries, whether effected before or after any payment under this insurance, whether made by us or you, shall be applied net of the expense of such recovery:

**(1)** First, to you in satisfaction of your covered loss in excess of the amount paid under this insurance;

**(2)** Second, to us in satisfaction of amounts paid in settlement of your claim;

**(3)** Third, to you in satisfaction of any Deductible Amount; and

**(4)** Fourth, to you in satisfaction of any loss not covered under this insurance.

**b.** Recoveries do not include any recovery:

**(1)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

**(2)** Of original **securities** after duplicates of them have been issued.

**16.** Territory

This insurance covers loss that you sustain resulting directly from an **occurrence** taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**17.** Transfer of Your Rights of Recovery Against Others to Us

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**18.** Valuation – Settlement

**a.** The value of any loss for purposes of coverage under this policy shall be determined as follows:

**(1)** Loss of **money** but only up to and including its face value. We will, at your option, pay for loss of **money** issued by any country other than the United States of America:

**(a)** At face value in the **money** issued by that country; or

**(b)** In the United States of America dollar equivalent determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was **discovered**.

**(2)** Loss of **securities** but only up to and including their value at the close of business on the day the loss was **discovered**. We may, at our option:

**(a)** Pay the market value of such **securities** or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those **securities**; or

**(b)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the **securities**. However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

**1)** Market value of the **securities** at the close of business on the day the loss was **discovered**; or

**2)** The Limit of Insurance applicable to the **securities**.

**(3)** Loss of or damage to **other property** or loss from damage to the **premises** or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

(a) The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose;

(b) The amount you actually spend that is necessary to repair or replace the lost or damaged property; or

(c) The Limit of Insurance applicable to the lost or damaged property.

With regard to Paragraphs **18.a.(3)(a)** through **18.a.(3)(c)**, we will not pay on a replacement cost basis for any loss or damage:

1) Until the lost or damaged property is actually repaired or replaced; and

2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

**b.** We will, at your option, settle loss or damage to property other than **money**:

(1) In the **money** of the country in which the loss or damage occurred; or

(2) In the United States of America dollar equivalent of the **money** of the country in which the loss or damage occurred determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was **discovered**.

**c.** Any property that we pay for or replace becomes our property.

**19.** Changes in This Coverage Part

No change or modification of, or assignment of interest under this Coverage Part shall be effective except when made by us through a written endorsement to this policy.

**B.** CONDITIONS APPLICABLE TO INSURING AGREEMENT **A.**

**1.** Termination as to Any Employee

This Insuring Agreement terminates as to any **employee**:

**a.** As soon as:

(1) You; or

(2) Any of your partners, **members**, **managers**, officers, directors or trustees not in collusion with the **employee**;

learn of **theft** or any other dishonest act committed by the **employee** whether before or after becoming employed by you.

**b.** On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**2.** Territory

We will pay for loss caused by any **employee** while temporarily outside the territory specified in the Territory Condition **A.16.** for a period of not more than 90 consecutive days.

**C.** CONDITIONS APPLICABLE TO INSURING AGREEMENT **B.**

**1.** Deductible Amount

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement **B.**

**2.** Electronic and Mechanical Signatures

We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

**3.** Proof of Loss

You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

**4.** Territory

We will cover loss that you sustain resulting directly from an **occurrence** taking place anywhere in the world. Territory Condition **A.16.** does not apply to Insuring Agreement **B.**

**D.** CONDITIONS APPLICABLE TO INSURING AGREEMENT **C.** and **D.**

**1.** Armored Motor Vehicle Companies

Under Insuring Agreement **D.**, we will only pay for the amount of loss you cannot recover:

**a.** Under your contract with the armored motor vehicle company; and

**b.** From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**2.** Special Limit of Insurance for Specified Property

We will only pay up to $5,000 for any one **occurrence** of loss of or damage to:

**a.** Precious metals (other than bullion), precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

**b.** Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**E.** CONDITIONS APPLICABLE TO INSURING AGREEMENT **E.**

**1.** Special Limit of Insurance for Specified Property

We will only pay up to $5,000 for any one **occurrence** of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**2.** Territory

We will cover loss that you sustain resulting directly from an **occurrence** taking place anywhere in the world. Territory Condition **A.16.** does not apply to Insuring Agreement **E.**

**F.** CONDITIONS APPLICABLE TO INSURING AGREEMENT **H.**

**1.** Ownership of Property; Interests Covered

The property covered under this Insuring Agreement is limited to property:

**a.** That your **client** owns or leases; or

**b.** That your **client** holds for others whether or not your **client** is legally liable for the loss of such property.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization including your **client**. Any claim for loss that is covered under this Insuring Agreement must be presented by you. Ownership of Property; Interests Covered Condition **A.12.** does not apply to Insuring Agreement **H.**

---

ML 116 01 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SOCIAL ENGINEERING FRAUD

This endorsement modifies insurance provided under the following:

**CRIME COVERAGE**

**SCHEDULE**

| Insuring Agreement | Limit of Insurance | Deductible Amount |
|---|---|---|
| **Social Engineering Fraud** | $50,000 | $10,000 |

Coverage is activated only for those options indicated by ☒ below:

☒ **Option I. Social Engineering Fraud - Internal**

    ☐ **A.**      Verification is Required for All **Transfer Instructions**

    ☐ **B.**      Verification is Required for All **Transfer Instructions** in Excess of $

    ☒ **C.**      Verification of **Transfer Instructions** is Not Required

☒ **Option II. Social Engineering Fraud - External**

    ☐ **A.**      Verification is Required for All **Transfer Instructions**

    ☐ **B.**      Verification is Required for All **Transfer Instructions** in Excess of $

    ☒ **C.**      Verification of **Transfer Instructions** is Not Required

With regard to this Social Engineering Fraud endorsement, the provisions of the Coverage Form to which this endorsement is attached apply, unless modified by this endorsement.

**A.** For the purposes of this endorsement only, **SECTION I - INSURING AGREEMENTS** is amended to include the following:

Social Engineering Fraud

1. Internal (if indicated in **Option I.** of the **SCHEDULE**)

   We will pay for loss resulting directly from your having, in good faith, transferred, paid, or delivered **money**, **securities** or **other property** in reliance upon a **transfer instruction** purportedly issued by an **employee**, or any of your partners, **members**, **managers**, **owners**, officers, directors or trustees, but which **transfer instruction** proves to have been fraudulently issued by an imposter without the knowledge or consent of your **employee**.

2. External (If indicated in **Option II.** of the **SCHEDULE**)

   We will pay for loss resulting directly from your having, in good faith, transferred, paid, or delivered **money**, **securities** or **other property** in reliance upon a **transfer instruction** purportedly issued by your **customer** or **vendor**, but which **transfer instruction** proves to have been fraudulently issued by an imposter without the knowledge or consent of your **employee**.

3. Verification

   a. The following is a precondition to coverage under this Insuring Agreement.

       (1) If **Option I.A.** and/or **II.A.** is selected in the **SCHEDULE**, you shall verify all **transfer instructions**; or

       (2) If **Option I.B.** and/or **II.B.** is selected in the **SCHEDULE**, you shall verify all **transfer instructions** in excess of the amount shown;

ML 201 05 16

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 1 of 2

according to a pre-arranged callback or other established verification procedure before acting upon any such **transfer instruction.** Such verification must be documented by you.

    b. If **Option I.C.** and/or **II.C.** is selected in the **SCHEDULE**, verification of transfer instructions is not a precondition to coverage under this insuring agreement.

**B.** For the purposes of this endorsement only, **SECTION II. DEFINITIONS** is amended to include the following:

**Customer** means an entity or individual to whom you sell goods or provide services under a pre-existing agreement that is still in effect at the time of loss or damage.

**Financial institution** means:

    **1.** A bank, savings and loan association, savings bank, trust company, credit union or similar depository institution;

    **2.** An insurance company; or

    **3.** A stock brokerage firm or investment company

**Owner** means a **member** or any other person having an ownership interest in you.

**Transfer instruction** means an instruction directing you to transfer, pay, or deliver **money, securities** or **other property**.

**Vendor** means an entity or individual from whom you have purchased goods or received services under a pre-existing agreement that is still in effect at the time of loss or damage. **Vendor** does not include any **financial institution**.

**C.** For the purposes of this endorsement only, **SECTION III - EXCLUSIONS** is amended to include the following:

This insurance does not apply to loss or damage that is insured, or would be insured if insurance coverage had been purchased, under any other Insuring Agreement provided or available under this Coverage Part.

**D.** For the purposes of this endorsement only, **SECTION IV - LIMIT OF INSURANCE** is deleted in its entirety and replaced by the following:

**SECTION IV - LIMIT OF INSURANCE**

The most we will pay for all loss resulting directly from an **occurrence** is the applicable Limit of Insurance shown in the **SCHEDULE** of this endorsement.

**E.** For the purposes of this endorsement only, **SECTION V - DEDUCTIBLE** is deleted in its entirety and replaced by the following:

**SECTION V - DEDUCTIBLE**

We will not pay for loss resulting directly from an **occurrence** unless the amount of loss exceeds the deductible shown in the **SCHEDULE** of this endorsement. We will then pay the amount of loss in excess of the deductible up to the Limit of Insurance.

**F.** For the purposes of this endorsement only, **SECTION VI - CONDITIONS**, **A.16.** is deleted in its entirety and replaced by the following:

    **16.** <u>Territory</u>

    This insurance covers loss that you sustain resulting directly from an **occurrence** taking place anywhere in the world.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADD CREDIT, DEBIT OR CHARGE CARD FORGERY

This endorsement modifies insurance provided under the following:

**CRIME COVERAGE**

and applies to the Forgery or Alteration Insuring Agreement:

**SCHEDULE**

| Limit of Insurance | Covered Instruments |
|---|---|
| $1,500,000 | ☒ Includes written instruments required in conjunction with any credit, debit or charge card issued to you or any **employee** for business purposes. |
| | ☐ Limited to written instruments required in conjunction with any credit, debit or charge card issued to you or any **employee** for business purposes. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**1.** Covered Instruments either includes or is limited to, whichever is indicated as applicable in the Schedule, written instruments required in conjunction with any credit, debit or charge card issued to you or any **employee** for business purposes.

**2.** The most we will pay in any one **occurrence** is the Limit of Insurance shown in the Schedule.

**3.** The following exclusion is added to **SECTION III - EXCLUSIONS**:

Non-Compliance With Credit, Debit or Charge Card Issuer's Requirements

The Forgery or Alteration Insuring Agreement does not apply to Loss arising from any credit, debit or charge card if you have not complied fully with the provisions, conditions or other terms under which the card was issued.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ML 436 01 18