**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

| | |
|---|---|
| **THE CINCINNATI INSURANCE COMPANY,** ) | |
| ) | |
| **Plaintiff and** ) | |
| **Counterclaim Defendant** ) | |
| ) | **No. 5:24-cv-05224-TLB** |
| ) | |
| **v.** ) | |
| ) | |
| **TNT CABLE CONTRACTORS, INC.,** ) | |
| ) | |
| **Defendant and** ) | |
| **Counterclaimant.** ) | |

## JOINT RULE 26(f) REPORT

1.      **Plaintiff/Counter-Defendant's Statement of the Case.**

Plaintiff/Counter-Defendant, The Cincinnati Insurance Company ("Cincinnati") issued an insurance policy (the "Policy") to Defendant/Counterclaimant TNT Cable Contractors, Inc. ("TNT"), which included a Crime Coverage Form. On or about May 11, 2022, TNT submitted a Proof of Loss alleging employee theft by TNT's former employee, Jeffrey Miles. Cincinnati understands that Jeffrey Miles was employed by TNT from approximately 1999 to November 30, 2021, when he was terminated. TNT asserts that, from 2017-2021, Jeffrey Miles, in conjunction with another TNT employee, Scott Stone, submitted "suspicious" reimbursement requests totaling approximately $2,300,000 to be reviewed, approved, and paid by TNT. According to the claim materials submitted by TNT in connection with its Proof of Loss, TNT hired a third-party accountant to investigate the reimbursement reports. The third-party accountant's operative report indicates that certain transactions submitted by Miles and Stone for reimbursement were "suspect" but did not conclude that any theft was committed by the employees. TNT also asserts that Miles conceded that he committed the theft that is the subject of TNT's claim. Cincinnati investigated

1

TNT's claim, and upon information and belief, Miles denies any wrongdoing in connection with his employment with TNT, and specifically denies falsifying any invoices, timecards or other documents. Additionally, upon information and belief, TNT was aware of and approved the transactions when issuing the reimbursements to Miles. Given the factual dispute and lack of definitive evidence supporting TNT's claim of employee theft, Cincinnati filed this action seeking a declaration as to Cincinnati's rights and obligations under the Policy, as well as an order declaring that coverage is not implicated under the Policy's Employee Theft and Claim Expense coverage, as TNT has failed to establish that a covered "employee theft" has occurred.

With respect to TNT's counterclaim, Cincinnati disputes that the damages alleged constitute a covered loss under the Policy. Because TNT has not established a covered claim for Employee Theft under the Policy, TNT is not entitled to recovery under the Claim Expense coverage to the Policy. Cincinnati has diligently investigated TNT's claim, denies that Cincinnati has breached its contact with TNT, and seeks a declaration from the court given the factual disputes relevant to the claim and TNT's failure to establish a covered claim to date.

2. **Defendant/Counter-Plaintiff's Statement of the Case**

After TNT became suspicious of a trend of reimbursement and payment requests by former employees Jeffrey Miles ("Miles") and Scott Stone ("Stone"), TNT investigated these requests and found significant evidence of Miles and Stone engaging in theft of TNT's property. Such theft meets the definition of Employee Theft under the Policy, and such losses are covered under the terms of the Policy. TNT further confronted Miles about these transactions, who then confessed to such theft. TNT also confronted Stone about these transactions, and he claimed that he was likewise deceived by Miles into engaging in such acts of theft. Therefore, on or about May 11, 2022, TNT timely submitted a Proof of Loss to Cincinnati for such losses.

4902-2828-0593, v. 1

However, Cincinnati failed to timely respond to and process such claim. This delay allowed Miles time and opportunity to recant his confession and create a false narrative in order to conceal his actions. Cincinnati also failed to keep TNT informed about the process and status of its claim, choosing instead to keep it in the dark up until it filed this declaratory judgment action based on Miles' version of the events. Cincinnati has refused to pay the amount owed under the Policy for Miles and Stone's theft of TNT's property. It has also refused to pay certain Claim Expenses incurred by TNT that are additionally owned under the Policy.

3. **Are there any Objections pursuant to Rule 26(a)(1)(C) to providing required Initial Disclosures?**

No.

4. **Are there any Objections to the timing of Rule 26(a) Initial Disclosures**?

No.

5. **Agreed Document Productions.**

- Plaintiff/Counter-Defendant –

Cincinnati possesses certain documents, data compilations, and tangible things that it may use in support of its claims. Those documents, data compilations, and tangible things include, but are not limited to, the following categories:

1. The Policy;

2. Any non-privileged correspondence or other documents between or among Cincinnati and TNT relative to the Policy or TNT's claim; and

3. Any non-privileged correspondence or other documents relevant to reimbursement requests submitted by Miles and/or Stone;

Cincinnati expressly reserves the right to rely upon any document, data compilations, and tangible things identified in TNT's Federal Rule of Civil Procedure Rule 26(a) Initial Disclosures

4902-2828-0593, v. 1

and/or any documents to be produced by the parties. Cincinnati also reserves the right to amend and/or supplement these productions as discovery continues.

- Defendant/Counter-Plaintiff –

TNT possesses certain documents, data compilations, and tangible things that it may use in support of its claims. Those documents, data compilations, and tangible things include, but are not limited to, the following categories:

1. The Policy;

2. Any non-privileged correspondence or other documents between or among Cincinnati and TNT relative to the Policy or TNT's claim; and

3. Any non-privileged correspondence or other documents relevant to reimbursement requests submitted by Miles and/or Stone; and

4. Any non-privileged correspondence or other documents relevant to the investigation of the theft committed by Miles and/or Stone.

TNT expressly reserves the right to rely upon any document, data compilations, and tangible things identified in Cincinnati's Federal Rule of Civil Procedure Rule 26(a) Initial Disclosures and/or any documents to be produced by the parties. TNT also reserves the right to amend and/or supplement these productions as discovery continues.

**6.      Discovery.**

**6(a).      How many months are reasonably necessary to complete discovery— as measured from the date of the Case Management Hearing?**

Six months.

**6(b).      Do the parties seek to alter (increase or decrease) the maximum number of written discovery requests allowed by the Rules?  If so, please explain.**

Not at this time.

4902-2828-0593, v. 1

**6(c). Do the parties seek to increase the maximum number of depositions allowed per side? If yes, please explain the necessity and state how many depositions per side are proposed**.

Not at this time.

**6(d). Please characterize the scope and extent of electronic discovery contemplated by the parties as follows: (i) none; (ii) fairly simple and routine; or (iii) complex. If your answer is "Complex," then please complete and attach Schedule A.**

Fairly simple and routine.

**6(e). Do you anticipate the use of Expert Witnesses at trial? If so, state proposed dates by which the parties will be in a position to provide initial and rebuttal expert disclosures pursuant Rule 26(a)(2).**

Yes. Initial expert disclosures should be made within 4 months, as measured from the date of the Case Management Hearing. Rebuttal expert disclosures should be produced within 30 days thereafter.

**6(f). Do the parties presently contemplate the need for a protective order prior to the exchange of documents or information?**

☐ No.
☒ Yes. The parties stipulate to entry of the Court's standard protective order.
☐ Yes. The parties stipulate to entry of a modified version of the Court's standard protective order.

**7. State the parties' best estimate as to the number of days reasonably necessary to fully try the case.**

Three.

**8. State whether 90 days—measured from the Case Management Hearing—is a sufficient amount of time to Add Parties and/or Amend Pleadings**

Yes, 90 days—measured from the Case Management Hearing—is a sufficient

amount of time to Add Parties and/or Amend Pleadings.

**9. Settlement Prospects.**

4902-2828-0593, v. 1

Unknown at this time. The parties anticipate the Court scheduling a Settlement Conference with a Magistrate Judge.

10. **Special Issues and Schedules.**

\_\_\_ **Federal Jurisdiction is Disputed**.

\_\_\_ **Action removed from state court and Plaintiff's Complaint does not specifically allege damages in excess of $75,000.00.**

\_\_\_ **Diversity Jurisdiction case where any party is a non-corporate entity (i.e. LLCs, LLPs, General Partnerships, Trusts, Estates, etc.)**.

\_\_\_ **Original action filed in this Court based on Diversity Jurisdiction where Plaintiff has named one or more "John Doe" Defendant(s).**

\_\_\_ **Complaint contemplates certification of a Rule 23 Class Action and/or a Collective Action pursuant to the Fair Labor Standards Act.**

\_\_\_ **Complaint seeks recovery for personal injuries and/or wage loss.**

11. **Have all corporate parties filed the disclosure statement contemplated by Fed. R. Civ. P. 7.1?**

Yes.

12. **Magistrate Judge Jurisdiction. Have all counsel discussed with their clients and each other the option of consenting to Magistrate Judge jurisdiction? Answer "Yes" or "No."**

Yes.

Respectfully Submitted,

By: */s/ Jarrod W. Stone*
Jarrod W. Stone, TN Bar No. 023915
*Admitted to U.S.D.C. W.D. of AR on August 21, 2014*
Melissa Jane Lee, TN Bar No. 029228
*Admitted to U.S.D.C. W.D. of AR on March 9, 2016*
MANIER & HEROD, P.C.
1201 Demonbreun Street, Ste. 900
Nashville, TN 37203
(615) 742-9314 (phone)
(629) 500-1137 (fax)

6

JStone@ManierHerod.com
MLee@ManierHerod.com

*Attorneys for Plaintiff/Counterclaim Defendant The Cincinnati Insurance Company*

By: */s/ Todd P. Lewis*
Todd P. Lewis
Ark. Bar No. 96226
CONNER & WINTERS, LLP
4375 N. Vantage Drive, Suite 405
Fayetteville, AR 72703
Telephone: (479) 587-5405
Facsimile: (479) 587-1426
Email: tlewis@cwlaw.com

*Attorneys for Defendant/Counterclaimant TNT Cable Contractors, INC.*

7

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via this Court's CM/ECF system

on the 22nd day of January, 2025 on the following:


Todd P. Lewis
Ark. Bar No. 96226
Conner & Winters, LLP
4375 N. Vantage Drive, Suite 405
Fayetteville, AR 72703

*Attorneys for TNT Cable Contractors, Inc.*


*/s/ Jarrod W. Stone*

4902-2828-0593, v. 1